McMULLEN, Petitioner v . STATE, Respondent

(173 N.W.2d 499)

(File No. 10720. Opinion filed January 20, 1970)

**Duane A. Thurow** and **Dennis A. Brown,** Aberdeen, for petitioner.

**Gordon Mydland,** Atty. Gen., **Walter W. Andre,** Asst. Atty. Gen., Pierre, **Roger L. Wollman,** State's Atty., Aberdeen, for respondent.

BIEGELMEIER, Judge.

■ It appears that the first informal papers filed in this proceeding were titled "William Glen McMullen, Petitioner, vs. The State of South Dakota, Respondent" and thereafter the papers were titled "State of South Dakota, Plaintiff (or Plaintiff-Respondent), vs. William Glen McMullen, Defendant (or Defendant-Petitioner)", and given the same clerk's filing number as, and filed with, the original criminal action. The Uniform Post-Conviction Procedure Act, now Ch. 23-52 of SDCL 1967, provides certain persons "may institute a proceeding under this chapter to secure relief" (SDCL 1967, § 23-52-1) to which "the state's attorney shall respond (SDCL 1967, § 23-52-9)". In order to secure uniformity in the title, subsequent docketing and filing of such Petition and other papers therein, the papers should designate the person who institutes the proceeding by name as petitioner and the State of South Dakota as respondent. The court has therefore so titled this proceeding.

William Glen McMullen was charged with the murder of his wife Donna on February 15, 1957, and, upon his plea of guilty, was sentenced June 26, 1957 to life imprisonment in the State Penitentiary. He filed a petition under the Uniform Post-Conviction Procedure Act, and appeals from a judgment entered May 26, 1969 denying any relief. Petitioner makes claims and arguments that fall into three categories as to the 1957 proceedings, i. e. (1) that the trial court failed to grant a change of venue, and so he did not receive a fair trial by an impartial jury which was a denial of due process guaranteed him under the 14th Amendment to the United States Constitution and Art. VI, § 2 of our constitution; (2) he was denied assistance of counsel and the right to have an attorney present during a police interrogation and the first preliminary hearing; and (3) the plea of guilty was not voluntary. Two attorneys were appointed for petitioner, and they have appeared for him at all times in this proceeding which included an extended hearing at which McMullen testified on his behalf and other witnesses for the State. The circuit court entered Findings of Fact and Conclusions of Law which found against all of petitioner's claims and entered the judg-

ment denying relief. We conclude the evidence supports the Findings of Fact and the Conclusions of Law and affirm the judgment.

The voluntary nature and effect of the plea of guilty will be first discussed, for if it was voluntary it is dispositive of the appeal. Petitioner does not directly challenge the sufficiency of the evidence to support the court's findings, nor did he propose any though given opportunity to do so. Nevertheless, mention will be made of some of the evidence. On Friday afternoon of February 15, 1957, petitioner forced his way into the school administrator's office at Aberdeen, shot his wife's father who attempted to restrain him and then hurried into the next room, past a secretary and, while his wife crouched on the floor, shot her several times. She died instantly. He surrendered to police later on a church step, though not before he shot another person who tried to disarm him. He was placed in jail; attempts were made to procure an attorney he requested. This attorney visited him Sunday, told him he would not represent him, but advised him not to answer questions or sign a statement that had been typed out. On Monday another attorney asked the preliminary hearing be postponed which it was until Wednesday. Petitioner and this attorney could not get together on the fees so he declined to accept the employment.

Two reputable counsel, one of whom had been a former state's attorney and experienced in criminal trials, were then appointed for petitioner and thereafter represented him in the criminal action. That they did so with skill and determination appears from the transcripts and record before us. They prepared a motion for change of venue which was supported and rebutted by numerous affidavits. The trial court denied this motion. Trial commenced June 19th, a jury was chosen and on the afternoon of June 26th, after the State had presented evidence for three days and rested, petitioner took the stand and testified in his own behalf. After a recess, Mr. Williams, one of petitioner's attorneys, advised the court he wished to make a motion to change defendant's pleas of "not guilty" and "not guilty by reason of insanity" which he had previously entered to "guilty as charged".

The record shows the court asked defendant to come forward and addressed extensive inquiries with reference to this motion directly to defendant as to whether he had heard his counsel's statement of his wishes; whether he understood what the effect of the motion would be if the court permitted it; that he would stand convicted of murder and what the possible punishment might be, to which several questions he answered, "I did", "I do", "Yes" and "Yes, I do", adding or inserting "Your Honor" in each answer. He then was asked if he was ready to state his wish to withdraw these pleas or either of them, to which he answered, "Yes, Your Honor, I am ready". The court asked him separately if he withdrew each plea and if he felt capable of protecting his rights, to each question he answered, "I do, Your Honor". The record, of which only a small part is set out here, continues:

"BY THE COURT: And you have talked this over with your counsel and, I presume, some members of your family?

"BY THE DEFENDANT: I have, Your Honor.

"BY THE COURT: And you have advised them just what you intend to do at this time?

"BY THE DEFENDANT: Yes, Your Honor, they know.

"BY THE COURT: Very well. The Court will accept the withdrawal of (each) plea * * * Are you at this time ready to enter the plea to this Information filed against you?

"BY THE DEFENDANT: I am, Your Honor.

"BY THE COURT: The Information, William Glen Mc-Mullen, charges you with the murder of Donna McMullen on the 15th day of February, 1957, within Brown County, South Dakota, by means of pistol wounds. What is your plea to that Information?

"BY THE DEFENDANT: I plead guilty as charged, Your Honor.

"BY THE COURT: The plea may be accepted and entered."

At the request of one of petitioner's attorneys the court heard testimony of two court-appointed psychiatrists. Then, after an extended discourse on the facts and solemn duty that faced the court in pronouncing sentence, defendant was sentenced to life imprisonment.

 The Findings of Fact and Conclusions of Law recite that petitioner, with the advice of counsel and in the presence of his father and grandfather, decided to withdraw the not guilty pleas and enter a plea of guilty; that this was done with full knowledge of his constitutional rights and full understanding of the consequences of such a decision; and that he was duly convicted and sentenced upon his voluntary plea of guilty to the charge of murder. An examination of the settled record which includes the files in the criminal action, transcripts of the preliminary hearings, the proceedings at the time of the change of the pleas of not guilty to guilty and of the post-conviction hearing, amply support, if not compel, these findings. The credibility of witnesses and the weight to be accorded their testimony is for the trial court. Larson v. Syverson, 84 S.D. 31, 166 N.W.2d 424. Findings of a trial court on a fact issue will not be disturbed on appeal where they are supported by substantial evidence and there is no preponderance against them. Quist v. Beto, 81 S.D. 375, 135 N.W.2d 730; Heezen v. Aurora County, 83 S.D. 198, 157 N.W.2d 26. This rule as to our review applies to post-conviction proceedings, State v. Roth, 84 S.D. 44, 166 N.W.2d 564, where it was also said the burden of establishing a basis for relief rests on the petitioner.

Petitioner's brief argues from and beyond the evidence contending that he entered his plea of guilty "knowing that if he changed his plea to guilty he would receive a life sentence, but that if he did not change his plea, he was very likely to receive the death penalty" citing some 30 pages of the 100 pages of his testimony. This testimony of his understanding of what he was told the judge said and what his instructions might be to the jury was indefinite and vague. Samples of it are:

"I at least understood our conversation Mr. Williams told me that the judge was going to demand one of two decisions * * * I knew as well as he (Mr. Williams) did that they (the jury) were not going to let me walk out of court * * * I was gave the impression * * * And he (his attorney) did not say that he had had a specific conversation with anyone * * * that perhaps is not exactly what he said but that is as I construed it".

The testimony of Mr. Williams, given under some limitations of the trial court, was his attorneys had advised petitioner of his rights; that he understood the discussion during the recess and Mr. Williams had no mental reservation or doubt that petitioner understood what he was doing.

Any inference that the trial judge may have indicated, prior to the guilty plea, his attitude as to the sentence rests not on any fact basis, but only in petitioner's testimony of what he alone now vaguely states was his impression. It is not supported, but in effect is refuted, by the testimony of his attorney at the 1957 criminal trial. The judge who presided at that trial is now deceased and without his evidence on the subject we could presume he made no such statements. However, the record then made by that judge in open court now speaks for him and clearly shows he had come to no prior decision as to the sentence. After entry of the guilty plea at the request of petitioner's attorneys the judge heard testimony of two well-known psychiatrists who had examined petitioner, one of whom was the Superintendent of the State Hospital and the other a past Superintendent then in private practice. After the allocution to defendant directly and to his attorneys, the judge made a rather extensive statement of the trial, the plea of guilty and choice before him in part as follows:

"In this particular case, the Court has a choice between the death penalty and life imprisonment. I have attempted to follow the testimony here as closely as I could and to determine just what that meant. * * * I do be-

lieve that legally you are absolutely sane. I do believe that you are too dangerous a man to ever be permitted to be at large again. I do believe that there is a mental situation, not legal insanity, but a mental condition which possibly makes you, as one of the doctors said, a dangerous man. I believe that definitely, and I think your acts demonstrate that. So it becomes necessary for the Court to determine at this time whether to send you to the electric chair with that mental condition facing the Court, or attempt to fix the punishment so that never again will you have an opportunity to be a free man. This Court, frankly, cannot bring itself to send a person to the chair about whom there is any question as to his mental condition; so that I am not going to sentence you to death."

The sentencing judge had heard all the testimony of the State and that of the defendant up to the recess, so he was well acquainted with it, yet here in addition, as the court said in State v. Patterson, Iowa, 161 N.W.2d 736:

"(T)he trial court carried on an extended question and answer colloquy with defendant himself".

After quoting this in State v. Mehuys, Iowa, 172 N.W.2d 131, 135-136, the court approving a guilty plea as voluntary wrote:

"before acting upon defendant's tendered plea of guilty the court determined, by addressing defendant personally, that the plea had been voluntarily tendered, that defendant understood the charge, knew the criminal consequences and there existed a factual basis supporting the plea." ·

That petitioner, with knowledge of all the evidence and advice of competent counsel, himself made the decision to plead guilty is also supported by the dialogue between the post-conviction judge and petitioner where petitioner tells of his conferences and discussions with his two attorneys at the criminal trial in the following excerpt:

"BY THE COURT: In other words, the person who was to say that you were to enter a plea of guilty was left up to you?

"BY THE WITNESS: Yes, \* \* \* (he) made me aware of the facts as he saw them and then I had to decide \* \* I pled myself.

\* \* \* \* \* \*

"BY THE COURT: The Court would like to have you \* \* \* answer this question: Who made the decision as to whether or not you should enter a plea of guilty? \* \* \*

"BY THE WITNESS: The final decision I made myself".

We conclude the record supports the trial court's finding that petitioner knowingly, voluntarily and understandingly entered his plea of guilty and that he was represented by competent counsel. No reason appears for setting it, or the sentence thereon, aside. Application of Dutro, 83 S.D. 168, 156 N.W.2d 771, and see State v. Eutzy, Neb., 172 N.W.2d 94.

■ ■ The effect of a voluntary and intelligent plea of guilty is to authorize the imposition of sentence prescribed by law on a verdict of guilty of the crime charged. State v. Mehuys, supra. It is more than a confession which admits the accused did various acts; it is, in itself, a conviction; nothing remains but to give judgment and determine punishment. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and see comments thereon by Roberts, J., dissenting in State v. Brech, 84 S.D. 177, 169 N.W.2d 242, 254. Petitioner's plea of guilty entered in 1957 meets the requirements of the 1969 Boykin opinion and the plea being itself a conviction it was a waiver of the right of trial by jury and obviates determination of other claims of petitioner. The judgment denying relief to petitioner is affirmed.

All the Judges concur.