**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Wayne DIEDE, Defendant and Appellant.**

**No. 13543.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 1982.

Decided May 26, 1982.

Douglas E. Kludt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Thomas M. Tobin of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendant and appellant.

HERTZ, Circuit Judge.

This is an appeal by defendant and appellant from his conviction of the offense of making unlawful telephone calls. SDCL 49-31-31(4). Two separate informations were filed against appellant charging the same offense, the first by David K. Decker and the second by his wife, Marilyn Decker. These two informations were consolidated for the purposes of trial. On July 15, 1981, the jury found appellant guilty on each charge, and shortly after the verdict that same day, the court sentenced appellant to one year in the county jail on each charge and ordered that the sentences should be served consecutively. We affirm.

The pertinent facts indicate that David K. Decker first heard appellant's voice in person three to three and one-half years prior to the trial. Less than three years prior to the trial, Mr. Decker, while driving on a street in Huron, passed appellant, who gestured obscenely towards him and yelled, "Hey, you Russian f_ _ _er." It appears that appellant's conduct and statement were repeated at a later point in time. Mr. Decker also heard appellant's voice during a fight that occurred between the two; he heard appellant's voice over the telephone some two and one-half years prior to trial, at which time appellant called and did in fact identify himself. The conversation lasted three to five minutes. It is claimed by Mr. and Mrs. Decker that some thirty-

five to forty calls were received over a two to two and one-half year period prior to the trial. Mr. Decker would ask who was calling and would receive various responses containing the usual obscenities. Mr. Decker testified that he recognized the voice of the person who made the thirty-five to forty anonymous phone calls as appellant's. Mrs. Decker indicated that she listened in on three or four of these conversations and recognized appellant's voice at the other end.

Mrs. Decker had known appellant for approximately four years. She estimated that she had heard appellant's voice in person for a total of ten hours over this period of time. In addition, she had spoken to appellant on the telephone a number of times.

The phone calls that precipitated this prosecution were made on April 25, 1981. At approximately 8:12 a. m. on that date, while at home with his wife and children, Mr. Decker answered a telephone call. The caller did not identify himself, but did say, "You f___ing Russian, what are you up to today?" Upon hearing this, Mr. Decker hung up the telephone. Mr. Decker testified at the trial that he recognized the anonymous caller's voice to be appellant's.

At 8:13 a. m. on the same date, the telephone rang at the Decker residence, and Mr. Decker answered it. Once more, the caller failed to identify himself, but did say, "Come where the party is." Mr. Decker again hung up the phone, since he recognized appellant's voice. Mr. Decker waited around for approximately fifteen minutes, and since there were no further phone calls, he left the house to drive to the local service station to service his automobile.

Mrs. Decker confirmed that her husband had indeed received the phone calls at 8:12 a. m. and 8:13 a. m. on April 25, 1981. She further testified that after her husband left for the service station, she received an anonymous phone call at 8:35 a. m. She did not recognize the caller's voice, but did recognize appellant's voice in the background saying, "Hey, you Russian f___er."

At 8:38 a. m., Mrs. Decker received a second telephone call. This time the caller said, "Where are we going?" Mrs. Decker,

recognizing the caller's voice as being appellant's, hung up. Two minutes later, she received a third telephone call. Again, the caller stated, "Where are we going?" She hung up the telephone again, since she recognized the caller to be appellant.

It appears that there is a deep-seated enmity existing between the Deckers and appellant. There are incidents involving motorcycles driven by appellant and another man and the Decker automobile which indicate that appellant conducted himself in a harassing manner at different times when coming upon the Deckers. Also, in 1979 appellant and Mr. Decker signed complaints against each other for assault. The same trial judge then fined both parties $100, with certain conditions attached.

Appellant raises the following issues on this appeal:

## I.

DOES SDCL 49–31–31(4) REQUIRE MORE THAN TWO CALLS TO BE "REPEATED CALLS" WITHIN THE MEANING OF THE STATUTE? We hold that it does not.

## II.

MAY TELEPHONE CALLS BE DEEMED "ANONYMOUS" TELEPHONE CALLS WITHIN THE MEANING OF SDCL 49–31–31(4) IF THE RECEIVING PARTY RECOGNIZES THE VOICE OF THE CALLING PARTY? We hold that they may be.

## III.

WAS THE EVIDENCE SUFFICIENT TO SUPPORT THE GUILTY VERDICTS? We hold that it was.

## IV.

DOES SDCL 49–31–31(4) VIOLATE THE SOUTH DAKOTA AND UNITED STATES CONSTITUTIONS BECAUSE OF VAGUENESS AND/OR BECAUSE IT INFRINGES UPON FREEDOM OF SPEECH? We hold that it does not.

## V.

DO THE SENTENCES IMPOSED IN THIS CASE CONSTITUTE EXCESSIVE, CRUEL, AND UNUSUAL PUNISHMENT? We hold that they do not.

Appellant contends that the statute contemplates more than two telephone calls to constitute "repeated" telephone calls.

SDCL 49–31–31 states in part:

It shall be unlawful for any person to use a telephone for any of the following purposes:

. . . .

(4) To call another person with intent to disturb any person by repeated anonymous telephone calls or intentionally failing to replace the receiver or disengage the telephone connection.

It shall be unlawful for any person to knowingly permit any telephone under his control to be used for any purposes prohibited by this section.

■ Webster's New Collegiate Dictionary 980 (1974) defines "repeated" as either (1) "renewed or recurring again and again"; or (2) "said, done, or presented again." We hold that the word "repeated" as used in SDCL 49–31–31(4) means merely more than one call. The legislature clearly intended that one call would not be sufficient to constitute a violation under the statute, and by using the word "repeated" obviously intended that the offense could be committed by the making of two or more calls.

■ Appellant further claims that the telephone calls were not "anonymous" within the meaning of SDCL 49–31–31(4), since the receiving parties in this case recognized his voice. Webster's New Collegiate Dictionary 47 (1974) defines "anonymous" as (1) "having or giving no name"; (2) "of unknown or unnamed origin"; or (3) "marked by lack of individuality or personality." Webster's Third New International Dictionary 89 (unabr. 1971) states: "having or giving no name: of a name or with the name unknown or unrevealed." We hold that the telephone calls made by appellant were anonymous within the meaning of the statute, and that simply because the Deckers recognized appellant's voice does not mean that the calls did not fall within the

definition of anonymous. It is simply a fortuitous circumstance that the Deckers had had the previous experience with appellant sufficient to identify his voice. Obviously, if they had been unable to recognize appellant's voice, there could have been no prosecution, absent other evidence of appellant's actions. Appellant's contention, if accepted, would prevent most prosecutions under the statute, since the caller's identification is usually revealed in precisely the manner that occurred in this case.

■ Appellant further contends that the evidence was insufficient to support the two guilty verdicts. We have said on numerous occasions that in determining the sufficiency of evidence on appeal, the test is whether or not there is evidence in the record, if believed by the jury, that is sufficient to sustain a finding of guilty beyond a reasonable doubt. In making this determination, we accept that evidence and the most favorable inferences that can fairly be drawn therefrom which will support the verdict. *State v. Lien*, 305 N.W.2d 388, 389 (S.D.1981). The factual statement originally set out herein amply supports the guilty verdicts returned by the jury, and no useful purpose would be served by the repetition of those facts.

Appellant further claims that SDCL 49–31–31(4) violates the South Dakota and the United States Constitutions because it is vague and overbroad in the use of the words "repeated" and "anonymous," and because it infringes on appellant's freedom of speech. In the recent case of *State v. Crelly*, 313 N.W.2d 455, 456 (S.D.1981), we said:

A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.

It is further specially noted that in *State v. Crelly*, supra, the court had under consideration the claim that SDCL 49–31–31(1) was unconstitutionally vague and overbroad in its use of the terms "obscene" and "lewd." While we are here dealing with different terms, the reasoning of the court in *Crelly* is nevertheless applicable. The court there said:

Certainly the State has a legitimate interest in providing its citizenry with protection from perverse telephone calls. With the passage of SDCL 49–31–31(1), our Legislature intended to ban the type of unreasonable conduct which, by its very nature, erodes the peace of mind and solitude of an unsuspecting individual. Conduct of this nature is obviously not protected by the guarantees of free speech provided for in the First Amendment.

*State v. Crelly*, supra, 313 N.W.2d at 457.

■ We accept the normal everyday meaning of the words "repeated" and "anonymous" as more specifically defined herein. In doing so, we hold that these words as found in SDCL 49–31–31(4) are neither vague nor overbroad and therefore not unconstitutionally vague as claimed by appellant.

Appellant also urges that the sentences of the court constituted excessive, cruel, and unusual punishment.

Appellant was convicted on two separate counts under SDCL 49–31–31(4). The maximum punishment upon conviction of a violation of SDCL 49–31–31 is a fine of $500, imprisonment in the county jail not to exceed one year, or both such fine and imprisonment. SDCL 49–31–34. Although appellant's sentences of one year on each count, the sentences to be served consecutively, represent the maximum incarceration that could have been imposed, they are within statutory limits, inasmuch as SDCL 22–6–6.1 authorizes consecutive sentences.

In *State v. Helm*, 287 N.W.2d 497, 498 (S.D.1980), the court stated:

South Dakota has adopted the rule that a sentence within statutory limits is not reviewable on appeal, even if it is regarded as excessive (citations omitted). This court has stated, however, that a sentence may be constitutionally offensive if its duration is so excessive as to "shock the conscience." *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977).

See also *State v. Phipps*, 318 N.W.2d 128 (S.D.1982).

■ While the sentences imposed are severe, they do not shock the conscience of the court. It does appear that at the time of sentencing appellant submitted a copy of a report that appellant represented as fairly reflecting his past criminal history. While we are not privy to the report, since it was never received formally by the trial judge, we find in the trial judge's statement at the hearing on appellant's motion for judgment of acquittal a list of the various criminal offenses involving appellant. From this statement sufficient justification of the sentence imposed does appear.

■ One other matter requires our attention. Appellant contends that the court erred when it failed to order a pre-sentence report pursuant to the provisions of SDCL 23A–27–5.* The State counters by claiming that appellant waived his right to a pre-sentence report. We agree with the State's contention.

A review of the record pertaining to the sentencing of appellant reveals that appellant's trial was concluded in one day. The verdict was returned at approximately 8:10 p. m., whereupon the court adjourned until 8:25 p. m., at which time counsel and appellant and the court returned to the courtroom, whereupon the court advised appellant and his counsel that sentence could not

---

* SDCL 23A–27–5 provides in part:

A presentence investigation may be ordered in the discretion of a court. The court service officer of a court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

be imposed until forty-eight hours had passed. SDCL 23A–27–1. Since there was no waiver at that time of the forty-eight-hour requirement by appellant, the court set sentencing for 9:30 a. m. the following Monday. The court determined that appellant might pose a danger to people in the community, and that therefore his personal recognizance bond should be revoked and he be remanded to the custody of the sheriff of Beadle County pending sentencing, whereupon appellant stated to the court, "Why don't I just take this up now and we won't have to come back down and everything, how does that sound? I am going to be over there anyway, right?" The court's response was "That's right." Appellant responded, "Right now. I will take the sentence now." Appellant's counsel thereupon stated to the court, "Your Honor, it appears my client has decided to waive the forty-eight hours waiting period and at this time is ready to go ahead with sentencing."

From the record it is apparent that appellant specifically waived the forty-eight-hour waiting period for sentencing. He also waived all preliminaries to the final sentence, including his right to a pre-sentence report, as well as to any mitigating factors. While the pre-sentence report was not expressly waived, the waiver was inherent in appellant's request to be sentenced "now." Appellant was at all times represented by competent counsel. While it is true that the court failed to make a finding on the record that it had sufficient information to enable the "meaningful exercise of sentencing discretion," this requirement was obviated by appellant's free and voluntary consent in open court to proceed with the final sentencing process.

While we hold that a valid waiver was effectuated by appellant, we encourage the use of pre-sentence investigations whenever a sentence of serious proportions is being considered, since a pre-sentence investigation report is an important and invaluable tool in the imposition of an appropriate sentence.

We affirm the judgment of the trial court.

All the Justices concur.

HERTZ, Circuit Judge, sitting for FOSHEIM, J., disqualified.