**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kenneth R. WEIKER, Defendant and Appellant.**

No. 14515.

Supreme Court of South Dakota.

Argued Nov. 28, 1984.

Decided April 17, 1985.

Rehearing Denied May 22, 1985.

Grant Gormely, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James D. Leach, Rapid City, for defendant and appellant.

FOSHEIM, Chief Justice.

This is the second appeal on three convictions and sentences for controlled substances distributions. *See State v. Weiker*, 342 N.W.2d 7 (S.D.1983) (*Weiker I*). We affirmed the convictions but reversed the sentences and remanded. *Id.* A resentencing hearing was conducted, and new evidence was taken. Kenneth Weiker was then sentenced to serve three concurrent eighty year terms. We affirm the sentence.

We must first review *Weiker I.* Did this Court determine that Weiker was capable of rehabilitation and mandate that he be given an opportunity for rehabilitation on resentencing as claimed, or did we merely direct the trial court to determine if Weiker *could* be rehabilitated and then sentence him accordingly? The trial court and the State maintain the latter.

The issue stems from this language in *Weiker I*:

Were his previous convictions for the same offense it would be relatively easy to write him off as incorrigible, beyond

rehabilitation, and a worthy candidate for a life sentence without parole. But that is not the case. His prior offenses were in the nature of offenses against property rights. In light of these past offenses, it appears contrary to one of the goals of our criminal justice system to deny any effort at rehabilitation.

*Weiker I,* 342 N.W.2d at 11–12. Then, after addressing life sentences without parole and setting terms of sentences in general, this Court said:

But even more strongly, we recommend to the trial court that the maximum of life sentence be imposed only in such cases where it can determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the convict be kept off the streets for the rest of his life; and that society, speaking through the legislature, has clearly mandated that the offense or offenses involved are so malignant that a lifetime of incarceration is the only adequate retribution.

*Weiker I,* 342 N.W.2d at 12.

■ In *Weiker I* we held only that his life sentence without parole was too harsh because it completely foreclosed rehabilitation. *Id.* We did not determine that he was capable of rehabilitation. Deciding whether Weiker is a likely subject for rehabilitation is a fact question to be decided by the trial court and will not be overturned unless clearly erroneous. *United States v. Hollis,* 718 F.2d 277, 279–280 (8th Cir.1983) *cert. denied* —— U.S. ——, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984). An appellate court is not equipped or designed to indulge in fact finding, *State v. Bolger,* 332 N.W.2d 718 (S.D.1983); *State v. Johnson,* 320 N.W.2d 142 (S.D.1982), and due regard must be given to the opportunity of the trial court to judge the credibility of witnesses. *See, McMullen v. State,* 84 S.D. 538, 173 N.W.2d 499 (1970); *State v. Spoonemore,* 287 N.W.2d 109 (S.D.1980); *Compare,* SDCL 15–6–52(a). The trial court correctly proceeded to determine the likelihood of rehabilitation.

■ Weiker next argues that the three concurrent eighty year sentences negate and frustrate any rehabilitation opportunity and are just as ineffective in that respect as the life sentences. Weiker will not be released until age sixty-two, or seventy-three, depending on whether he receives all of his good time and a parole. He argues this is not reasonably within his life expectancy and thus, the sentence in effect reimposes the life sentences. *State v. Lohnes,* 344 N.W.2d 686 (S.D.1984). The State counters that no break-off age can, or has been, adopted. The State also argues that life expectancy should not be a consideration in sentences, and that the eighty year sentences did therefore adequately leave room for rehabilitation. A sentence which allows for release at age seventy-three is not the same as a life sentence without parole. Courts have consistently made the distinction between a felony term sentence and life without parole. *See, United States v. Stead,* 740 F.2d 657 (8th Cir.1984); *Moreno v. Estelle,* 717 F.2d 171 (5th Cir. 1983); *cert. denied,* —— U.S. ——, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984); *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Moreover, we have shown reluctance to become involved in passing on sentences. *State v. Antelope,* 304 N.W.2d 115 (S.D.1981); *State v. Du-Bois,* 301 N.W.2d 425 (S.D.1981); *See also, Solem v. Helm,* 463 U.S. 277, ——, 103 S.Ct. 3001, 3017, 77 L.Ed.2d 637, 658 (Burger, C.J., dissenting). We see no need to second-guess the trial court on this issue.

We must next determine whether the Eighth Amendment proportionality analysis set forth in *Solem v. Helm, supra,* applies to our review of this sentence. The *Solem v. Helm* proportionality criteria adopted in *Weiker I, supra* at 11, are: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same offense in other jurisdictions.

In *State v. Williamson,* 342 N.W.2d 15 (S.D.1983), this Court interpreted the *Helm* decision as requiring proportionality analy-

sis *only* "when a life sentence without parole is imposed." *See also, State v. Dillon,* 349 N.W.2d 55 (S.D.1984), *following State v. Williamson, supra.* *Williamson* and *Dillon* appear to be in conflict with *Solem v. Helm.* These cases represent two lines of South Dakota authority that need to be reconciled with *Solem v. Helm.* The first is the longstanding rule that we do not review sentences that fall within the maximum range set by the legislature. *State v. Williamson,* 342 N.W.2d at 18 and authorities cited therein. The second is that we consider the proportionality of a sentence only when a life sentence without parole is imposed. *Williamson, supra; Dillon, supra.*

In *Solem v. Helm,* the United States Supreme Court rejected the argument that proportionality analysis does not apply to sentences for a term of years:

The Constitutional principle of proportionality has been recognized explicitly in this Court for almost a century ... Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold.

*Solem v. Helm,* 463 U.S. 277, ——, 103 S.Ct. 3001, 3007–3008, 77 L.Ed.2d 637, 646–648 (1983).

There is no basis for the State's assertion that the general principle of proportionality does not apply to felony prison sentences. The constitutional language itself suggests no exception for imprisonment. We have recognized that the Eighth Amendment imposes "parallel limitations" on bail, fines, and other punishments, ... and the test is explicit that bail and fines may not be excessive. It would be anomalous indeed if the lesser punishment of a fine and the greater punishment of death were both subject to proportionality analysis, but the intermediate punishment of imprisonment were not. There is also no historical support for such an exception. The common-law principle incorporated into the Eighth Amendment clearly applied to prison terms.... And our prior cases have recognized explicitly that prison sentences are subject to proportionality analysis ... ("Confinement in a prison

... is a form of punishment subject to scrutiny under Eighth Amendment standards").

. . . .

In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted.

*Id.* 103 S.Ct. at 3009.

■ The overriding principle is that no sentence is *per se* constitutional. *Id.* We hold that felony sentences are subject to Eighth Amendment proportionality review. To the extent that *Williamson, supra,* and *Dillon, supra* indicate we review felony sentences *only* when life without parole is ordered, they are modified. *Id.* The question now before us is how extensive that review should be. We look to how other courts have approached sentence review since the *Helm* decision.

■ In *United States v. Collins Spencer Catch The Bear,* 727 F.2d 759 (8th Cir. 1984), the Eighth Circuit Court of Appeals upheld a five year sentence for escape even though it considered it a "long one in the circumstances of [the] case." *Id.* at 761. The Court could not say the sentence was an "abuse of discretion," "greatly excessive," or "manifestly disproportionate to the crime or criminal." *Id.* A sentence within the statutory maximum generally is not disturbed. *See, United States v. Roth,* 736 F.2d 1222 (8th Cir.1984) (upheld fifteen year concurrent sentences on each count of making an extortionate extension of credit, and using extortionate means to collect or attempt to collect an extension of credit).

In *United States v. Hollis,* 718 F.2d 277 (8th Cir.1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984), the Eighth Circuit upheld a twenty five year sentence for five counts of interstate transportation of forged securities. The Court held, "a sentence within the statutory maximum which is 'greatly excessive under traditional concepts of justice' or 'manifestly disproportionate to the crime or criminal' is reviewable by the federal court.... This court cannot, however, substitute its judgment for the discretion committed sole-

ly to the district court." *Id.* at 279. *See also, United States v. McMahan*, 744 F.2d 647 (8th Cir.1984). The Eighth Circuit upheld the twenty five year sentence in part because the district court found that Hollis had "committed crimes at almost every opportunity when not incarcerated," and that he could not be rehabilitated. *Hollis, supra.*

In *Moreno v. Estelle*, 717 F.2d 171 (5th Cir.1983) *cert. denied*, —— U.S. ——, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984), the Fifth Circuit Court of Appeals upheld a life sentence with parole eligibility under the Texas habitual offender statute and discussed *Helm* and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). *Id.* at 179–180. "The *Solem* decision does set forth 'objective criteria' to be used in 'a court's proportionality analysis under the Eighth Amendment.' ... Nevertheless, the [United States Supreme] Court expressly did not require extensive analysis with regard to every petition for habeas corpus relief raising that issue." *Id.* at 180. The Fifth Circuit Court of Appeals explained that *Rummel* did not foreclose proportionality review of sentences for a term of years and thus did not violate *Helm;* rather, *Rummel* is now controlling only in a similar fact situation. *Id.* The appeals court indicated that a primary consideration was whether parole eligibility was granted in a sentence within a reasonable time. *Id. See also, United States v. Stead*, 740 F.2d 657 (8th Cir.1984) (distinguished *Helm* on grounds that appellant was eligible for parole).

■ Based upon our review of *Helm, supra, Rummel, supra,* and the cases above, we decline to subject every felony sentence to exhaustive review. As the United States Supreme Court stated in *Helm* :

we do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Helm, supra,* 103 S.Ct. at 3009, footnote 16. We recognize, as did the United States Supreme Court, that *"successful* challenges to the proportionality of particular sentences will be exceedingly rare." *Helm, supra* 103 S.Ct. at 3009, *quoting from Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382, 389 (1980).

■ We will first determine whether a sentence "shocks the conscience; " *State v. Diede*, 319 N.W.2d 818 (S.D.1982), *State v. Holtry*, 321 N.W.2d 530 (S.D.1982); or is so disproportionate to the crime so as to activate the Eighth Amendment "within and without the jurisdiction" proportionality tests enunciated in *Helm, supra.* If a sentence is manifestly disproportionate to the crime, or in the case of life sentences without parole, then the other two factors listed in *Helm* become more focused and require extensive review. This procedure will likely prevent the "floodgates from opening," as was heralded by the State. Courts will not need to accept vast statistical information at every sentencing hearing. It will also relieve this Court from the impossible task of reviewing for proportionality one term of years, as opposed to shorter or longer terms. *Helm, supra* 103 S.Ct. at 1139–1140.

This is similar to our past method of review. In both *Williamson* and *Dillon*, we mentioned the possibility of parole, *see, Williamson, supra,* at 18, and the fact that consecutive five year sentences were within statutory limits and did not "shock the conscience," *Dillon, supra* at 56. *See also, Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *State v. Diede, supra; State v. Holtry, supra.* But *see, Rhoden v. Israel*, 574 F.Supp. 61 (E.D. Wisc.1983) (applied *Helm* three prong test

to review seventeen year sentence for armed robbery-sentence upheld).

▮▮▮▮ In *this* case then, we decide the threshold question whether the eighty year concurrent sentences "shock the conscience" or are disproportionate to the crime. Relevant here are the nature of Weiker's current convictions for drug distribution, and the fact that his prior offenses were relatively minor. *See, Weiker I,* supra. We also acknowledge that successful challenges to sentences for a term of years are exceedingly rare, *Rummel, supra;* that great deference is given to the discretion of the sentencing court, *Id.;* [1] and that this sentence is within the statutory maximum, SDCL 22–7–8, 22–6–1(2).

In view of these factors, we can not say that the trial court abused its discretion or that Weiker's sentence shocks the conscience of this Court.

We next look at Weiker's sentence to determine if it is disproportionate to sentences imposed on other criminals in the same jurisdiction. At the resentencing hearing, the trial court took evidence regarding proportionality of the sentence within the jurisdiction, Pennington County. Weiker contends that based upon evidence that his sentence is seventy years longer than the next longest sentence in the jurisdiction (Weiker's exhibit), and fifty years longer than the average sentence served by South Dakota habitual offenders (State's exhibit), his three eighty year concurrent sentences are disproportionate. In *Catch The Bear* however, the Eighth Circuit upheld a five year sentence for an escape conviction even though that sentence was "three times greater than the national average." *Catch The Bear, supra* at 761.

The record indicates there are no hard and fast statistics on whether his sentence is disproportionate to that given for similar offenses in other jurisdictions. Weiker argues that because his sentence is the equivalent of a life sentence, he could have received a greater penalty in only two other states—Nevada and Wyoming. We have addressed Weiker's proposition that his sentence is the equivalent of the previously imposed life without parole sentence, and concluded that it is not the same. Further, we are unable to draw any conclusions as to other jurisdictions for want of facts in the record.

Weiker urges us to appoint a new judge if the Court remands his case for resentencing. Weiker contends the sentencing judge had his decision made prior to the resentencing hearing in which evidence was submitted on his behalf. He argues that the sentencing memorandum prepared prior to the hearing evidences a pre-determination that he could not be rehabilitated. The State counters that the sentencing memorandum leaves open any specific term of sentence; thus, the trial court could have changed his mind if Weiker's evidence showed he could be rehabilitated.

▮▮▮▮ Weiker argues that because the sentencing memorandum was prepared and the sentencing court took only five minutes to decide the length of the sentence after the hearing concluded, the hearing was not meaningful, since it came after the court made its decision. *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), *quoting from Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Weiker's argument in this regard goes to whether he received due process at the February resentencing hearing and whether that alleged lack of due process is itself grounds for reversal and remand.

---

1. Of course, we also consider whether the trial court abused that discretion—"for example, [if the trial court] failed to read the presentence report, or listen to what the defendant or his lawyer had to say, or in short attend responsibly to the performance of his awesome duty of fixing the punishment that, within the statutory limits, will fit the crime and the criminal." *United States v. Ely,* 719 F.2d 902, 906 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984). Weiker touches on this in his request that a new judge be appointed on any resentencing. The judge prepared a sentencing memorandum prior to the hearing which justified a lengthy sentence, even though it did not set out the *number* of years, and which was negative about Weiker's capacity for rehabilitation.

In our view it must be remembered that the trial court was already quite familiar with the facts and circumstances. There is no time factor mandated for the judge to draw a decision. The memorandum indicates pre-hearing preparation. The judge had done his homework in reviewing. Weiker's second legal argument asserts that if this Court, for whatever reason, remands his case for resentencing, the case should be reassigned to a different judge. He contends the leading case this Court should follow is *United States v. Robin*, 553 F.2d 8 (2nd Cir.1977). Since we do not remand for re-sentencing, we need not address that issue.

We affirm.

WOLLMAN and MORGAN, JJ., and WUEST, Circuit Judge, Acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

With the "modification" of *Williamson* and *Dillon*, this Court enters a new era. For those students of the criminal law, now equate this "modification" with my dissent in *State v. Helm*, 287 N.W.2d 497, 499 (S.D.1980), which dissent was honored and quoted in part by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). *Helm* was reversed. As recent as February 20, 1985, *Helm* was cited for authority in *State v. Big Head*, 363 N.W.2d 556, 565 (S.D.1985). In my special concurrence in *Big Head*, I took exception to this and quoted my dissent in *Helm* which took into consideration early cases in this Court, previous United States Supreme Court decisions, and particularly the Eighth Amendment to the United States Constitution. Equate the "modification" of *Williamson* and *Dillon* with my special writing in *Big Head*.

I do not wish to join any sentencing opinions, issued from this Court, which I believe to contravene *Solem*. In my opinion, the sentences imposed upon Weiker are significantly disproportionate and violate the spirit of the holding in *Solem*, violate the Eighth Amendment of the United States Constitution, and violate Article VI, § 23, of the South Dakota Constitution. For those reasons and others expressed herein, I dissent.

Let us review the procedural background in this case. Weiker was originally sentenced to life imprisonment for each of his three convictions of distribution of a controlled substance. Upon appeal to this Court, this Court held that these sentences violated Article VI, § 23, of the South Dakota Constitution, which forbids cruel punishments. Of significant note, this Court, in a rather lofty and aureate manner, described the goals of the criminal justice system in this country. The first opinion in *Weiker*, 342 N.W.2d 7 (S.D.1983), specifically recognized that rehabilitation was a chief goal of the criminal justice system and reflected that so far as Weiker was concerned, he could not be written off as being incorrigible and beyond rehabilitation. *Id.* at 11–12. In light of this language, I find it shocking that the trial court, upon remand, decided that it would, anew, "determine whether or not Mr. Weiker can be rehabilitated." This mental frame of mind, with the trial court, becomes exceedingly important for, as I will detail below, the trial court had its mind made up before the evidence was presented to it. The sentencing rehearing was a mock, hollow hearing without meaning. The trial court's determination as to whether or not Mr. Weiker "can be rehabilitated," flies in the face of the highest Court of this state's determination. It appears to me that the trial court was bound by the decision of this Court and could not deviate from this Court's holding that Weiker could be rehabilitated. The trial court made this determination: "This Court knows of no possible means to rehabilitate this Defendant." Compare this, please, against the language expressed in *Weiker*. The trial court also made this determination: "I believe the goal of rehabilitation cannot be achieved in this case and that Mr. Weiker must forfeit his right to be free in society for a substantial period of time." Rehabilitation of Weiker was settled by this Court and disposed of by a judgment. It was the

duty of the trial court to carry into execution the mandate of *Weiker*. *See United States v. Cato Bros., Inc.*, 273 F.2d 153, 157 (4th Cir.1959), *cert. denied*, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959); *accord*, *United States v. Redmond*, 571 F.2d 513 (10th Cir.1978), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1645, 56 L.Ed.2d 83 (1978). I stand by the rule that a lower court must obey the decisions of an appellate tribunal. Without that rule, the entire system of appellate justice is for naught. When this Court decided that Weiker could be rehabilitated, Weiker reasonably had the right to rely upon that decision and he thus had a right to rehabilitate himself in accordance with that decision, in addition to the accorded underpinnings of the criminal law, namely, that imprisonment is not calculated to be brutal or to destroy mankind but is established to protect society and rehabilitate the offender so that once again he can breathe the air of a free man.

I find it almost unbelievable that the State of South Dakota took the position at the resentencing hearing that Weiker should again be sentenced to three concurrent life sentences. The essence of the previous decision was that evidence should be taken and a new inquiry made into a suitable sentence proportionate to the offenses committed. An iron curtain came down and the message in *Weiker* was forgotten or disregarded in the lower court. It appears that the resentencing court could only see one issue; and that was whether or not Weiker could be rehabilitated. That decision had been made in this Court in *Weiker* and it was fundamental error for the trial court to assume such a legal posture. The evidence to be adduced and which was adduced, assumed that Weiker could be rehabilitated and the judgment to be sought was a just sentence to be proportional under the *Solem* criteria. Therefore, the entire proceedings below inhered of a false premise and outlook.

It is highly unlikely that Weiker will ever walk out of the Penitentiary gates. He appears to be destined to die in prison. Is this rehabilitation? Should he live to be 73 years of age, what a glorious life he will have before him. The year will be 2024 and as the prison gates open and he takes a look at downtown Sioux Falls, perhaps he can muse "now, I am rehabilitated." The rehabilitation factor, which we set forth in *Weiker*, has been forsaken by the reality of Weiker's age and the three 80-year sentences which are tantamount to spending the next four decades of his life in prison.

One must consider our holding in *State v. Lohnes*, 344 N.W.2d 686 (S.D.1984) (Henderson and Morgan, Justices, dissenting), wherein this Court determined that a 347-year sentence was not less than a life sentence. Are the three 80-year concurrent sentences "less than a life sentence" when we consider good-time and parole eligibility statutes? In effect, then, has not the trial court reimposed the life sentences previously struck down by this Court? Weiker's release date is on or about March 27, 2024, at which time he will be 73 years of age. Surely, this is either beyond his life expectancy or at its outer edge.

The majority opinion correctly sets forth the proportionality criteria in *Solem*, by referring to its adoption in *Weiker*. Then, however, it fails to apply those criteria to the facts at hand. Perhaps my point may be best illustrated by the words of Mr. Justice Powell of the United States Supreme Court in a specially concurring opinion in *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and as further found in 30 *Criminal Law Reporter* 4159, 4160 (1982):

> Yet, our system of justice always has recognized that appellate courts *do* have a responsibility—expressed in the proportionality principle—not to shut their eyes to grossly disproportionate sentences that are manifestly unjust.

*Hutto*, 454 U.S. at 377, 102 S.Ct. at 707, 70 L.Ed.2d at 562 (emphasis in original). Again, Mr. Justice Powell expresses:

> Sentencing disparity in our country primarily results not from varying statutory limits among the States. Rather, in a nation of our size and with the sentencing decision in particular cases vested—as it should be—in trial courts, a good deal of disparity is inevitable. Effort to

minimize this, at least on a state-by-state basis, certainly should be continued.

*Hutto,* 454 U.S. at 380, 102 S.Ct. at 709, 70 L.Ed.2d at 564.

In *Hutto,* in a dissenting opinion by Mr. Justice Brennan, with whom Mr. Justice Marshall and Mr. Justice Stevens joined, Mr. Justice Brennan wrote:

The question presented here is whether the sentence imposed on respondent *in this case* comports with the limitation contained in the Eighth Amendment. To reverse on the basis of *Rummel [v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)], the Court must *at least* demonstrate why this is not one of those "exceedingly rare" cases in which the Eighth Amendment invalidates a sentence as disproportionate. But the per curiam engages in no such analysis.

*Hutto,* 454 U.S. at 383–84, 102 S.Ct. at 710, 70 L.Ed.2d at 566–67 (emphasis in original; footnote omitted). As I shall set forth, neither the trial court nor the majority opinion have engaged in a disproportionate analysis.

No penalty is per se constitutional. *Solem,* 103 S.Ct. at 3009–10. Therefore, these three 80-year concurrent sentences must be subjected to a meaningful proportionality analysis. GRAVITY OF THE OFFENSE AND CRUELTY OF THE PENALTY. Weiker has paid his debt to society for his prior offenses and thus the focus must be on the current offenses. *Solem,* 103 S.Ct. at 3013 n. 21. In *Weiker,* this Court characterized Weiker's previous offenses as being offenses against property rights and said that they were "relatively minor," *Weiker,* 342 N.W.2d at 12 n. 6. Since *Weiker* came before us and was decided, the gravity of the offenses has not changed; and the harshness of the penalty has not changed for Weiker will still be confined in prison for, realistically, his natural life. SENTENCES IMPOSED ON OTHER CRIMINALS IN THE SAME JURISDICTION. Both Weiker and the State presented evidence at the resentencing hearing concerning the second factor under *Solem.* Of paramount importance is a detailed study undertaken by defense counsel submitted and received into evidence of all felony sentences imposed in Pennington County, South Dakota, in 1981, 1982, and 1983. These are the three years prior to the resentencing hearing.

(a) Of 336 persons found guilty or convicted of felonies, 183 were placed on probation, had imposition of sentence suspended, or imprisoned for one year or less; the remaining 153 were imprisoned for more than one year.

(b) Of 31 persons found guilty or convicted of distribution of controlled substances (excluding Weiker), 14 were placed on probation, or received suspended imposition of sentence; the remaining 17 were imprisoned. Of the 17 who were imprisoned, the median sentence was 3 years 4 months; the mean sentence was 3 years 9 months.

(c) Weiker was the only person sentenced to life imprisonment in Pennington County during this period.

(d) Seven persons were found guilty or convicted of homicide; the median sentence for these persons was 6 years imprisonment and the mean sentence was 20 years 2 months imprisonment.

(e) Five persons were found guilty or convicted of first-degree robbery; the median sentence for these persons was 25 years imprisonment and the mean sentence was 40 years 9 months imprisonment. (Two of these five persons were sentenced as habitual offenders for armed bank robbery and had prior armed bank robbery convictions).

(f) Five persons were found guilty or convicted of first-degree rape; the median sentence for these persons was 15 years imprisonment and the mean sentence was 15 years 2 months imprisonment.

(g) Of the total 336 persons found guilty or convicted of felonies, excluding Weiker, only 10 were sentenced to terms of imprisonment longer than 10 years. Every one of these persons sentenced to longer than 10 years was convicted [of] first-degree manslaughter, first-degree rape, or first-degree robbery, with the exception of the defendant in [case] 81–

103, who was sentenced to 30 years for second-degree burglary, third-degree burglary, and forgery, and who according to the [circuit court] file had eight prior felony convictions at the time of sentencing.

Approximately one-half of the 31 persons who were sentenced for distribution of controlled substances in Pennington County received no imprisonment, while the other half received an average sentence of three years and some months. Therefore, Weiker's sentence of 80 years is approximately 77 years longer in duration than the average sentence of imprisonment imposed in Pennington County for distribution of a controlled substance during the period of the study. His sentence is also 78 years longer than the overall average sentence, that is, the average sentence of those who were imprisoned and those who were not imprisoned for distribution of a controlled substance during the same period of time. Weiker's sentence of 80 years is 70 years longer than the next longest sentence imposed in Pennington County during this period on any convicted defendant of the crime of distribution of a controlled substance. At the resentencing hearing, a "progress report" on Weiker signed by the Warden of the State Penitentiary and Weiker's counselor described Weiker as not being "a violent or aggressive person." Yet, Weiker's sentence is undisputably longer than the typical sentences for rape, robbery, and homicide which are crimes of violence. No law student can deny that a proportionality analysis must exist and be given a meaningful application. Therefore, compare the fact that Weiker's sentence is 74 years longer than the median sentence for criminal homicide and 60 years longer than the mean sentence for criminal homicide. Weiker's sentence is 55 years longer than the median sentence for first-degree robbery and 40 years longer than the mean sentence for first-degree robbery. Further, his sentence is 65 years longer than both the mean and median sentences for first-degree rape. Yes, I assert that this is one of those "rare cases" in which the Eighth Amendment invalidates a sentence as being disproportionate.

The State sought to compile and present relevant evidence of its own on sentencing in the State of South Dakota. This was reflected by State's Exhibit 8. State's Exhibit 8 was a compilation of all persons currently serving sentences as habitual offenders in South Dakota. Basically, it is perhaps flawed because the proportionality analysis "must focus on the principal felony." *Solem*, 103 S.Ct. at 3013 n. 21. Even the State's exhibit, to my way of thinking, establishes a disproportionality in Weiker's sentence. There were 28 nonviolent habitual offenders and the median term of imprisonment was 10 years. Of the 28 nonviolent habitual offenders who received three or more prior convictions, the median term of imprisonment, per the State's exhibit, is 12 years. The longest term of imprisonment being served by any of the 28 nonviolent habitual offenders is a sentence of 30 years which was imposed on one Richard Williamson who had 13 prior felony convictions at the time of his last sentencing. Perforce, the State's evidence illustrates that Weiker's sentence is 70 years longer than the average term of imprisonment being served in this state by nonviolent habitual offenders and 68 years longer than the average term of imprisonment being served in this state by nonviolent habitual offenders with three or more prior felony convictions. Graphically, the State's resentencing evidence proves that Weiker's sentence is some 50 years longer than the next longest sentence now being served in the South Dakota State Penitentiary by any other nonviolent habitual offender. I draw an inescapable conclusion: Weiker's three 80-year sentences fall grossly outside of the range of sentences which were imposed in Pennington County for drug distribution and likewise grossly outside of the range of sentences imposed in South Dakota for nonviolent habitual offenders. Where, in justice, do you draw a line and reach a conclusion that a sentence has crossed from the proportionate to the disproportionate? In each case, an analysis must be engaged in to determine if the Eighth Amendment invalidates the sentence as being disproportionate. Mr. Jus-

tice Brennan was alarmed that the per curiam opinion in *Hutto* made no engagement in analysis. I am alarmed that the trial court and the majority opinion turns its eyes away from these statistics which vividly exhibit a disproportionate sentence. The days of kingly judgments in trial courts are over. The days of grave disparity in sentencing is over. If *Solem* is to be given meaning, then a keen insight and deliberation must be made in those cases wherein it appears that a sentence of a term of years has crossed from the proportionate to the disproportionate. An analysis of the statistics and sentences in South Dakota which illustrate my point have been cast to the winds of result orientation. Perhaps, as Justice Oliver Wendell Holmes once wrote, "It is idle to illustrate further, because to those who agree with me I am uttering common places and to those who disagree I am ignoring the necessary foundations of thought."

Lastly, Weiker was denied due process of law guaranteed to him by the Fourteenth Amendment and Article VI, § 2, of the South Dakota Constitution. Without being unduly repetitive, the trial court saw its duty first and foremost, to determine whether or not Weiker could be rehabilitated. This had already been decided. The trial court went into the resentencing hearing with a closed mind. At the resentencing hearing, Weiker presented the progress report, which I earlier described, signed by the Warden of the State Penitentiary. In addition to this, he filed a study of all of the felony sentencing imposed in Pennington County for three years prior to his sentencing. It stands unrefuted in the record. Weiker also called three witnesses. One of the witnesses had most probative evidence concerning Weiker's drug dependency. This witness, Pat Harbin, the Director of the Chemical Dependency Awareness Program, testified that the South Dakota State Penitentiary has no drug treatment program as such but that it does have a drug awareness program.* She testified that Weiker's attendance record was very

good and that he had completed the drug awareness program successfully. Though the State and the majority opinion and the sentencing judge would write off Weiker that he would spend every day of his life behind bars, I would not do so. If I were to do so, my underlying belief in the goodness of man would be destroyed. My belief in the criminal justice system in the United States would be destroyed. And there is hope for Weiker, for Director Harbin testified: "I saw some growth and some reaching out on his part in this area." She further testified that Weiker indicated his desires to be free of his long-time drug habit and that Weiker had always been truthful to her. Perhaps Weiker's statements were simply calculated to create a good impression. Perhaps they were sincere. But the person with whom he worked in this program believed that there was hope for him. The trial court cast aside all of this testimony. In fact, Director Harbin's testimony concluded at 12:10 p.m. on February 28, 1984. There was a five-minute recess. Counsel and the parties then moved to a downstairs courtroom and proceedings thereupon recommenced at 12:15 p.m. With five minutes of meditation and reflection upon a man's life after testimony, the court then pronounced its sentence. The majority opinion characterizes this as the trial judge having done his homework. Consider that immediately before pronouncing sentence, the trial court explained in open court that it had prepared a sentencing memorandum to explain the sentence and that Weiker and his counsel would be given a copy. The sentencing memorandum could not possibly have been prepared in this five-minute recess. It is obvious that the resentencing court prepared its sentencing memorandum prior to any of the testimony at the hearing. The sentencing memorandum consists of seven double-spaced, typewritten pages containing some 1,931 words. Of these 1,931 words, not one statement is made concerning the testimony in the resentenc-

---

* Harbin testified that Weiker told her that he had been using drugs heavily since the age of 17. "[A]nd he said he very much would like to get in-depth treatment, which we do not provide here."

ing hearing. There are 134 words pertaining to proportionality, 36 words of which are a lament on the supposition that "it is very difficult to determine proportionality and to sentence an offender based upon a mathematical calculation." The trial court also expresses that it is difficult to determine proportionality due to "the lack of additional information concerning the offender." But there was information submitted during the resentencing hearing and the trial court does not mention this. The trial court notes that there has been a "wide disparity of sentences on these exhibits," referring to the fact that the exhibits do, indeed, reflect disparate sentences. It is this "disparate" sentencing that the lay people cannot understand and that offenders suffer under. A chief goal of proportionality is to eradicate disparate sentences. Suffice it to say, there was no in-depth analysis of proportionality of sentences in Pennington County, South Dakota, even though the material was submitted to the trial court. The sentencing memorandum dealt extensively with Weiker's juvenile record and a history of misdemeanors that were either dismissed or upon which he was convicted or released. With the exception of the 134 words mentioned above, the balance of the sentencing memorandum was of material and history possessed by the resentencing court which the resentencing court had at the original sentencing. It is absolutely fundamental to due process of law that a judicial decision be based upon evidence adduced before the court. *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287, 301 (1970). A hearing such as a resentencing hearing must be accorded with the right of due process. "What the constitution does require is 'an *opportunity* ... granted at a meaningful time and in a meaningful manner'...." *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419, 424 (S.D.1984) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971), quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965) (emphasis in original)). *See also, Parratt v. Taylor*, 451 U.S. 527, 540, 101

S.Ct. 1908, 1915, 68 L.Ed.2d 420, 432 (1981); *Northwest S.D. Production Credit v. Dale*, 361 N.W.2d 275, 278 (S.D.1985). Weiker did not have a meaningful opportunity to be heard, for the resentencing court had reached its decision that he was not rehabilitatable before any testimony was heard. The sentencing memorandum set forth the rationale for the three 80-year sentences. The fact that the specific term of the sentence was not in the memorandum decision is not controlling. It is fundamental that a trial court must hear both sides of a case in order to render a fair disposition. Weiker had the opportunity to be heard but the opportunity which was granted did not flow in a meaningful manner. I would reverse so that an analysis would ultimately be meaningful and would assign a new trial judge to hear this case. If a trial court adheres to an erroneous view after the error has been called to its attention, reassignment should follow. *See United States v. Brown*, 470 F.2d 285, 288 (2nd Cir.1972). *See also, United States v. Robin*, 553 F.2d 8, 11 (2nd Cir.1977), wherein it advised that "reassignment to another judge may be advisable in order to avoid 'an exercise in futility [in which] the Court is merely marching up the hill only to march right down again,' *United States v. Tucker*, 404 U.S. 443, 452, 92 S.Ct. 589, 594, 30 L.Ed.2d 592 [,599] (1972) (Blackmun, J., dissenting)."