STATE of South Dakota, Plaintiff
and Appellee.

v.

Roland Lewis LYBARGER, Defendant
and Appellant.

No. 17670.

Supreme Court of South Dakota.

Considered on Briefs on April 23, 1992.

Reassigned Oct. 13, 1992.

Decided March 3, 1993.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Shawn Jensen Pahlke, Office of Public Defender, Rapid City, for defendant and appellant.

MILLER, Chief Justice (on reassignment).

Roland Lybarger appeals his judgment of conviction for aggravated assault. We affirm.

## FACTS

Lybarger was living with Corinne Vermillion and her infant son during spring 1991. Lybarger and Corinne went out together on the evening of May 15, 1991. Corinne returned home without Lybarger and went to sleep. Believing she had left with another man, Lybarger came back to their apartment and attacked her in bed. During the attack he bit off the lower portion of her left ear and bit her several times on the face, arms, and hands. A neighbor heard the attack and called the

police. When police arrived Corinne's face and chest were covered with blood and she was still bleeding. An ambulance delivered Corinne to the emergency room of the Rapid City regional hospital.

Lybarger was charged the next day with two counts of aggravated assault. The trial court appointed a public defender to represent Lybarger. Lybarger sent a letter to Corinne telling her if she refused to testify, the charges would have to be dropped. Corinne refused to testify and requested that State drop the charges.

A trial was held on July 8, 1991. State called several witnesses to establish that Corinne had left South Dakota to avoid testifying against Lybarger. The trial court granted State's request for permission to use the transcript of Corinne's preliminary hearing testimony where she described the attack. That transcript was read to the jury.

State called five other substantive witnesses. Marcella Carl, Corinne's next door neighbor, testified about hearing the fight and calling the police. Jerry Big Eagle, a Rapid City police officer, testified about his observations upon arriving at Corinne's apartment. He testified that Corinne had bites and bruises on several locations on her body. Her left earlobe had been bitten off and she was bleeding all over her face and chest. Through Officer Big Eagle's testimony the State admitted several photographs, taken shortly after the attack, that showed the severity of some of Corinne's injuries. Shawn Hayward, another Rapid City Police Officer, testified about his observations of Lybarger during the arrest.

Patrick Kenney, an ambulance driver, testified about Corinne's physical condition and injuries when the ambulance arrived to pick her up. He testified that her left earlobe had been severed. He found the severed portion of the earlobe and took it to the hospital hoping that it could be reattached. Doctors later determined that it could not be reattached.

Dr. Peter Anthony Maningas, an emergency room physician at Rapid City regional hospital, testified extensively about the nature of the injuries to Corinne. Then, the prosecuting attorney asked Dr. Maningas whether Corinne's injuries constituted serious, bodily injury. Lybarger objected. The jury was excused and the prosecutor asked Dr. Maningas several questions to establish a foundation for his opinion about whether Corinne suffered serious, bodily injury. The trial judge asked several questions and then decided to allow Dr. Maningas to give his opinion about serious, bodily injury. The jury returned and the following testimony was given.

Prosecutor: Doctor, some time has gone by, Doctor, but if you'll consider the definition I read to you, okay? The phrase, serious, bodily injury, under the law means injury which is grave and not trivial and which gives rise to apprehension of danger of life, health or limb. Do you now understand what I read to you?

Dr. Maningas: Yes.

Prosecutor: Based upon your training and experience, do you have an opinion as to whether or not the injuries sustained by Corinne Vermillion that night that you treated her for, constituted serious, bodily injury?

Dr. Maningas: Yes, I do have an opinion, and that opinion is that it did constitute by that definition serious, bodily injury.

Prosecutor: And why do you say that?

Dr. Maningas: The reasons being, first, it was not trivial and permanent disfigurement is not trivial and, second, there is apprehension to danger or apprehension to the risk of danger to one's health, both on her part and my part and my part being that there was risk to her health both mentally and physically in terms of mentally what it would do to her psychologically in the future and physically potential for infection at that time. I did initiate IV and antibiotics. The ear is particularly susceptible to infection.

Lybarger's defense attorney did not cross-examine Dr. Maningas as to his opinion about "serious, bodily injury." Lybarger did not present any medical expert to rebut Dr. Maningas testimony.

The jury found Lybarger guilty of aggravated assault under SDCL 22–18–1.1(4).[1] The trial court sentenced Lybarger to six years in the state penitentiary and ordered him to make restitution of $379.10 for Corinne's hospital bill. Lybarger appeals.

## DECISION

### THE TRIAL COURT COMMITTED HARMLESS ERROR WHEN IT ALLOWED DR. MANINGAS TO GIVE HIS OPINION ABOUT WHETHER CORINNE'S INJURIES CONSTITUTED SERIOUS, BODILY INJURY.

The trial court has broad discretion concerning the admission of expert testimony. *State v. Hill*, 463 N.W.2d 674 (S.D. 1990).[2] The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion. *State v. Logue*, 372 N.W.2d 151 (S.D.1985).

State had to prove beyond a reasonable doubt that Corinne had suffered "serious, bodily injury." *See* SDCL 22–18–1.1. Lybarger asserts that the trial court abused its discretion by allowing the expert witness, Dr. Maningas, to give his opinion about whether Corinne's injuries constituted "serious, bodily injury." He contends the trial court allowed the expert witness to invade the province of the jury to decide whether an element of the offense had been satisfied.

The current law in South Dakota is that an expert witness may not "usurp" the power of the jury by giving opinions on the "ultimate issues" of the case. *See Logue*, 372 N.W.2d at 156–157.[3]

In *State v. Jenkins*, 260 N.W.2d 509 (S.D.1977), this Court reversed a criminal conviction where a psychiatrist, as an expert witness, was allowed to give his opinion that Jenkin's defense testimony was not true. Dr. Maningas was not asked to give an opinion as to the truthfulness of a witness or the veracity of a story. Nor was Dr. Maningas asked to give his opinion of whether Lybarger was guilty of aggravated assault. However, he was asked to give his opinion as to whether an element of a criminal offense had been satisfied. An expert witness may give testimony to help the jury decide an ultimate issue, however, the expert should not give an opinion on the ultimate issue itself. For example, in *Vogt v. Billion*, 405 N.W.2d 635 (S.D. 1987), we held that it was improper to ask an expert witness whether a doctor's conduct constituted malpractice. Similarly, allowing an expert witness to give his opinion as to whether an element of an offense has been satisfied is an invasion of the province of the jury. *State v. Hill*, 463 N.W.2d 674 (S.D.1990) (expert could give testimony about lineup procedures to help jury, but offering his opinion on the identification issue itself was an invasion of the province of the jury).

The expert opinion's role is to assist the jury in resolving questions of fact. A physician's expert opinion about the nature and severity of injuries would certainly assist a jury. But Dr. Maningas' testimony went beyond medical matters. Dr. Maningas was asked to apply his medical observations to a legal definition and give his opin-

---

**1.** SDCL 22–18–1.1 provides in part:
   Any person who:
   &ast; &ast; &ast; &ast; &ast; &ast;
   (4) Assaults another with intent to commit bodily injury which results in serious bodily injury;
   &ast; &ast; &ast; &ast; &ast; &ast;
   is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

**2.** The admissibility of expert testimony is governed by SDCL 19–15–2 which states:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu-

cation, may testify thereto in the form of an opinion or otherwise.

**3.** The Federal Rules of Evidence abandoned the "ultimate issue rule" as long ago as 1978. *See* Fed.R.Evid. 704. South Dakota is apparently the only state which has, thus far, declined to adopt any version of Federal Rule of Evidence 704. 2 Gregory P. Joseph ET AL., Evidence In America: The Federal Rules In The States, § 53.2 (1990). The "ultimate issue rule" is no longer of any value and should be abandoned. *See State v. Burtzlaff*, 493 N.W.2d 1, 11 (S.D. 1992) (Wuest, J., concurring in part and dissenting in part).

ion whether that legal definition had been satisfied. It is the jury's role to decide whether the elements of an offense have been met. It was a clear abuse of the trial court's discretion to allow Dr. Maningas to give his opinion on an element of the offense.

■ However, the error was harmless under SDCL 23A-44-14. We find beyond a reasonable doubt that the jury would have convicted Lybarger even if Dr. Maningas had not given his opinion on the "ultimate issue." *See State v. Younger*, 453 N.W.2d 834, 838 (S.D.1990).

The jurors were clearly instructed that they were the triers of fact and were entitled to resolve all factual questions. There was a significant amount of evidence about the nature of the injuries caused to Corinne. *See State v. Brown*, 480 N.W.2d 761 (S.D.1992); *State v. Tribitt*, 327 N.W.2d 132 (S.D.1982) (discussion of the effect of cumulative evidence on trial court errors). Photographs were admitted into evidence which showed the injuries inflicted upon Corinne. Officer Big Eagle and ambulance driver Kenney both testified extensively about the severity of the injuries to Corinne. The jurors were also read Corinne's preliminary hearing testimony where she described Lybarger's attack on her. Last, before he was improperly allowed to answer the "ultimate issue" question, Dr. Maningas described the injuries in detail and explained the life-threatening complications which could have occurred. In the face of this overwhelming evidence, the jury clearly would have concluded that Corinne suffered serious bodily injury.

■ An individual is not entitled to a perfect trial, but he is entitled to a fair trial. *State v. Bennis*, 457 N.W.2d 843, 847 (S.D.1990) (citing *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208 (1973)). Lybarger received a fair trial.

We have considered Lybarger's other argument concerning cruel and unusual punishment and we find it to be lacking in merit. We affirm the trial court.

WUEST, J., concurs.

HENDERSON, Justice, specially concurs and concurs in result.

SABERS and AMUNDSON, JJ., dissent.

HENDERSON, Justice (specially concurring; concurring in result).

In my opinion, the State's Attorney went too far; he improperly couched the question.

However, our analysis cannot end at that point. Rather, this Court must consider these facts established by the State:

1. Photographs of the victim's injuries taken at the hospital (gruesome);

2. Testimony of officer Jerry Big Eagle and a technician by the name of Kennedy, both depicting serious bodily injury (blood all over face from bites and an ear lobe bitten off by appellant);

3. Preliminary hearing testimony of the victim (received properly as she fled the jurisdiction of the court to prevent testifying during the trial);

4. Evidence testified to by the medical doctor who examined victim at the hospital (and who expressed, inter alia, that victim's injuries were threatening to the health of victim because of potential infection).

Thus, although State's Attorney's questioning was couched in the words of the statute, evidence coming from the mouth of Dr. Maningas was not the only evidence in the record to establish a serious bodily injury. This jury could determine, from the pictures alone, received in evidence, that an ear lobe had been bitten off. Therefore, as described above, the jury verdict was supported by the evidence. Where inadmissible evidence admitted at trial is cumulative (Dr. Maningas'), and other admissible evidence supports the jury's verdict or a judge's findings, the cumulative evidence, though inadmissible, is nonprejudicial. *See, State v. Tribitt*, 327 N.W.2d 132 (S.D.1982), written by this special writer, on behalf of this Court some 10 years ago. Very recently, we reiterated this holding in *State v. Brown*, 480 N.W.2d 761 (S.D.1992). Said another way, Dr. Maningas' testimony was not the only testimo-

ny which convicted Lybarger. A jury is entitled to accept one witness' version of the facts and reject another's. *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). Thus, the expert's witness could be rejected by the jury. Black letter law would signify that the credibility of witnesses and weight to be accorded their testimony and *weight of the evidence* is for the jury. *McMullen v. State*, 84 S.D. 538, 173 N.W.2d 499 (1970). Manifestly, there was evidence to sustain a burden of proof that the victim sustained a serious bodily injury.

If the intent of footnote 3 in the majority opinion is to express that *Burtzlaff* held: "The ultimate issue is no longer of any value and should be abandoned," it behooves me to correct such an observation. Two Justices joined the majority opinion which did not so hold. Rather, Justice Wuest expounded, at 19–22 of the slip opinion, on the Federal Rule, which was agreed to by Chief Justice Miller. My concurrence in this case is based upon settled law of this state that (1) Dr. Maningas' conclusion, although inadmissible, was cumulative evidence and, as such, was nonprejudicial (2) the jury, by overwhelming evidence aside from his opinion, could find Lybarger guilty beyond a reasonable doubt. Exhibits and photographs, plus testimony of the on-scene officers, who observed a profusely bleeding ear, without ear lobe, dramatically depicts a serious bodily injury. In South Dakota jury trials, it is a common place instruction given unto jurors to draw upon their experience in life and as *sensible* men and women—arrive at a fair verdict. This was a fair verdict. Jury Instruction No. 35 provided: "Consider this case carefully and honestly with due regard for the *interests of society* and the rights of the defendant." (Emphasis supplied mine). Obviously, the jury did consider the interests of society by rendering a verdict decrying the savagery of this assault. We, in the judiciary, cannot, in one breath, ask a jury to consider the interests of society, permitting it to exercise its sworn duty, and then disregard its deliberation rendering its verdict to a state of impotence. As I view justice here, to hold that biting off an ear lobe is not a serious bodily injury, concomitant with a savage attack upon the face of this woman, would be a miscarriage of justice. To hold otherwise, is an effrontery to common sense.

SABERS, Justice (dissenting).

I agree with the majority opinion to the extent that it states:

> [A]llowing an expert witness to give his opinion as to whether an element of an offense has been satisfied is an invasion of the province of the jury.

.        .        .        .        .

> *But Dr. Maningas' testimony went beyond medical matters.* Dr. Maningas was asked to apply his medical observations to a legal definition and give his opinion whether that legal definition had been satisfied. It is the jury's role to decide whether the elements of an offense have been met. It was a clear abuse of the trial court's discretion to allow Dr. Maningas to give his opinion on an element of the offense.

(Citation omitted) (emphasis added).

In view of these statements, how can the majority possibly "find beyond a reasonable doubt that the jury would have convicted Lybarger even if Dr. Maningas had not given his opinion on the 'ultimate issue?'" (Citation omitted.) I cannot. Therefore, I join the dissent of Justice Amundson.

AMUNDSON, Justice (dissenting).

I respectfully dissent. I am not convinced that the admission of Dr. Mangas' opinion on one of the elements in the charge was harmless error under SDCL 23A–44–14, nor am I convinced that a jury would have returned a verdict of guilty absent the admission of the element testimony.

The victim did not testify against her boyfriend (Lybarger). Thus, State perceived a weakness in their case on proving the element of "serious, bodily injury" under SDCL 22–18–1.1. Rather than relying on the small amount of testimony given by the victim during the preliminary hearing, which testimony from the victim did not

reflect that she had been in fear for her life, limb or health, State elected to use the high-powered testimony of a practitioner of the healing arts as the only direct evidence about the victim's alleged apprehension of serious bodily injury. The trial judge specifically noted that the testimony on this element was a close call for the fact finder/jury. It is possible that without this expert testimony on the ultimate issue the jury could have found that the victim had, in actuality, sustained a serious bodily injury, but the harmless error rule requires more than a mere possibility. This rule requires this court to be convinced beyond a reasonable doubt that the jury would have convicted Lybarger without this improper high-powered expert testimony. I am not so convinced beyond a reasonable doubt. Although this defendant is not entitled to a perfect trial, this injection of erroneous evidence into the record by State denied Lybarger a fair trial.

I would reverse this conviction and remand the case to the trial court so that a new, fair trial can be had.