SEVERSON, Justice.
£¶ 1.] A jury convicted Cleve Robert Janis, Jr. of third-degree rape (victim incapable of giving consent due to intoxication) on January 14, 2015. Janis appeals his conviction, arguing that the' circuit court erred when it admitted undisclosed expert testimony. Janis also argues that the prosecutor committed misconduct through various ’ statements during trial and that there was improper contact between a juror and a spectator. We affirm.
Background
[¶2.] The jury in-this, case heard evidence that Janis married Jamie Moreno on August 23, 2013, in Hot Springs, South Dakota. J.E., the victim in this case, was Moreno’s maid of honor. After the ceremony, J.E. consumed a large number of alcoholic drinks at the. reception.. At approximately 1:00 a.m., J.E. received a ride to the home of Janis and Moreno, where *78 she was staying the night. At the time, her speech was quite slurred and she appeared very intoxicated. She did not remember how she made her way to the spare bedroom or how she made it into bed.
[¶ 3.] About an hour after J.E. left the reception, Janis and Moreno returned to their home. Janis was intoxicated. Wedding guests stated that Janis had consumed a large number of alcohol drinks at the reception. When Janis and Moreno arrived, J.E. was already asleep in the spare bedroom. Janis continued to drink champagne. At some point, he wanted a cigarette and left his bedroom.
[¶ 4.] J.E. was awakened by someone lying in bed behind her, placing his penis into her anus. She did not know who the person was, asked “who is this?” and followed the question by repeating the words “stop” and “no.” J.E. remembered being somewhat awake, but testified that she was “frozen” during the assault. She recalled passing out again sometime later.
[¶ 5.] In the morning, J.E. awoke to find Janis in her room, clothed only in his boxers. When he attempted to have sex with her, J.E. rejected his advance and asked him if he knew who had sex with her the night before. He told her that he thought there had been a tall stranger in the house, and that it may have been him. However, Janis did admit to the authorities early in the investigation that he had sex with J.E., but alleged that it was consensual.
[¶ 6.] Shortly after Janis left her room, J.E. met Moreno in the bathroom and told Moreno what she could remember from the previous night, including the fact that she did not know who had sex with her. Moreno suggested that J.E. report a rape to the authorities and go to the hospital. J.E. testified that she was scared and just wanted to leave town to make it to her new job on time, so she left Hot Springs that morning without going to the police or hospital. However, J.E.’s mother stopped at J.E.’s work later that day and convinced her to report a rape, and J.E. agreed to go to the hospital after work, where a sexual assault examination was performed. J.E. reported the incident to the police five days later.
[¶ 7.] On December 10, 2013, Janis was charged with third-degree rape. A jury trial was held on January 13 and 14, 2015. The prosecutor at trial was the State’s Attorney for Fall River County. Janis’s appellate counsel is a different attorney than his trial counsel. Janis’s theory at trial was that the sex was consensual. However, the prosecution’s theme — beginning with voir dire and culminating in the State’s closing argument — focused on broken marriage vows and character. In voir dire, the prosecutor questioned the potential jurors about wedding vows and how keeping those vows relate to a person’s character. This theme of honoring wedding vows recurred throughout the entire trial. He told the jurors, “And when you think of this case, think about those vows and what those vows mean. And those vows are only as good as the character of the person taking those vows.”
[¶ 8.] The prosecutor repeatedly referred to the importance of vows during his cross-examination of Janis and in closing arguments. He began closing argument by stating, “[Mjaybe this is what the case is all about, maybe the case is all about those vows are only as strong as the person’s character that took those vows. Maybe that’s what this case is about.” Later in closing he continued, “And this goes to character. This goes to the character of the person that took the vows, and that is essentially what I’m asking you to judge is, I’m asking you to judge Cleve Janis and his character when he took those *79 vows.” Finally, he ended in rebuttal argument with, “And what we’re talking about is Cleve Janis — and I’m going to finish up with it because we started with it. Those vows are only as good and only as strong as the person and their character taking those vows.” The defense did not object to any of these statements made by the prosecutor during trial.
[¶ 9.] The prosecution’s first witness on the second day of trial was J.E. During cross-examination, the defense asked her why she waited to report the crime and whether or not she was truly “frozen” during the incident. After J.E.’s testimony, the prosecutor called Karen Murphy, the Certified Nurse Practitioner that supervised J.E.’s sexual assault examination. The prosecutor sought her opinion regarding J.E.’s claim that she was “frozen” during the assault. The prosecutor first asked, “Now, in your training in dealing with rape victims, we’ve had testimony about freezing, frozen, can’t move. Is that a normal response when being raped?” The defense objected to this question for lack of foundation, and the trial court sustained the objection. The prosecutor then asked Murphy about her education and training regarding the treatment of rape victims. Murphy stated that she had received generalized training for emergency medicine and mental health that encompassed the treatment of rape victims. The prosecutor then asked:
Then I’ll ask you, based upon your experience,--your continuing education, the degree that you’ve got, the hundreds of — or approximately a hundred rape victims that you’ve dealt with, based upon all that, have you ever had — based upon all that, is it common or at least does it occur that when a woman is being raped, that she will freeze?
The defense again objected, arguing that there had been no notice of expert testimony for this topic. Through discovery prior to trial, the defense had requested the disclosure of expert witnesses and their opinions, and the prosecution did not identify Murphy’s opinion to be that rape victims freeze. The trial court sustained the objection. The prosecutor then followed up with, “Have you ever heard of a woman freezing while she’s being raped?” The defense again objected:
Defense:' Objection. I don’t know if she’s going to make the statement in some sort of expert capacity, but I expect that she will, and there’s been no notice of that.
The Court: Well, we’re, not talking in expert , opinions, sq that’s overruled at this point. We’ll see where it goes.
Murphy: Um, yes, um — can you ask me again?-
Prosecutor: You’ve experienced it before. Yes?-
Murphy: I have, yes. People have different — I mean, they obviously react differently, and it’s not uncommon for people not to do anything.
Prosecutor: And what did [J.E.] tell you about how she reacted?
Murphy: Um, what she told me was that she didn’t — she froze. She didn’t move. I didn’t go into a lot of detail with [J.E.] because Jessica Sonne was our RN that did the collection and she spent more time obviously asking those questions. I was — but I did, um, get a brief overview, and she did say that she was — that she didn’t fight. She was not hurt. She didn’t fight, she told me.
[¶ 10.] During trial there was also an issue regarding contact between a spectator and a member of the jury. The defense made the circuit court aware that he had witnessed a spectator speaking with a juror during a recess. Counsel informed the court of the spectator’s name, that the *80 spectator had previously tried to communicate with counsel, and that the- bailiff witnessed the contact. Considering the admonishments the court had already given the jury, the circuit court did not wish to question the bailiff, juror, or spectator,-as the court thought that more attention to the contact would only be harmful. However, the court did ask the attorneys if they desired any further action. Janis’s attorney did not object, but just requested a cautionary word to the bailiff.
[¶ 11.]' Janis appeals his conviction, arguing three issues:
1. Whether the circuit court erred by permitting Karen Murphy to testify as to what she had experienced regarding rape victims.
2. Whether the improper contact between the juror and spectator requires reversal.
3. Whether the prosecutor committed prosecutorial misconduct.
Analysis
[¶ 12.] 1. Whether the 'circuit court erred by permitting Murphy to testify as to what she had experienced regarding rape victims.
[¶ 13.] Janis argues that the circuit court‘erred when it found that Karen Murphy’s testimony was not expert testimony. He argues that the testimony was expert testimony requiring disclosure to the-defense prior to trial. “We review a [circuit] court’s decision to admit or deny an expert’s testimony under the abuse of discretion standard.” State v. Johnson, 2015 S.D. 7, ¶ 30, 860 N.W,2d 235, 247 (quoting State v. Kvasnicka, 2013 S.D. 25, ¶ 18, 829 N.W.2d 123, 128), An abuse of discretion “is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable” State v. Beckwith, 2015 S.D. 76, ¶ 7, 871 N.W.2d 57, 59.
[¶ 14.] SDCL 19-19-701 governs a lay witness’s opinion testimony that is not subject to expert disclosure requirements. Under this rule,
[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) Rationally based on the witness’s perception; (b) Helpful to clearly understanding the witness’s testimony or to determining a fact in issue; and (c) Not based on scientific, technical, or other specialized knowledge within the scope of § 19-19-702.
SDCL 19-19-701. We construe evidentia-ry rules regarding opinion testimony liberally so as to relax the traditional barriers to opinion testimony. State v. Condon, 2007 S.D. 124, ¶ 30, 742 N.W.2d 861, 870.
[¶ 15.] The admitted testimony in this case conforms to the requirements of SDCL 19-19-701, and thus did not need to be' disclosed prior to trial. Janis argues that the prosecutor expressly asked Murphy to make generalities about rape victims based on hér training, work, and experience rather than her contact with J.E. It is true that the prosecutor asked these questions apparently attempting to lay foundation for inappropriate questions based on expert opinions not disclosed through discovery. However, the circuit court sustained Janis’s objections to those questions. The only objection that the court overruled' was to the prosecutor’s question of: “Have you ever heard of a woman freezing while being raped?” (Emphasis added.) Murphy answered, “I have, yes. People have different — I mean, they obviously react differently, and it’s not uncommon for people not to do anything.” (Emphasis added). The admitted answer was based on Murphy’s personal perceptions, throughout her career, of rape victims freezing, a response that did not *81 require any specific or specialized knowledge. See Gerlach V; Ethan Coop Lumber Ass’n, 478 N.W.2d 828, 831 (S.D.1991) (holding that testimony analogous to this case did not violate a pretrial motion in limine prohibiting expert testimony where the witness was asked if he or she was personally aware of something and he or she responded affirmatively); cf. Freedom Wireless, Inc. v. Boston Commc’ns Grp., Inc., 369 F.Supp.2d 165, 157 (D.Mass.2005) (holding that an- opinion from an expert was impermissible only because it was so far removed from-the -witness’s experiences and instead based on his technical knowledge). There is a distinction between the prosecutor’s earlier, disallowed questions and the question which Murphy was allowed to answer. The circuit court ■did not abuse its discretion by allowing Murphy to testify about her own perceptions of rape victims freezing.
[¶ 16.] While reversal is not warranted, we do not endorse the prosecutor’s approach in this case.[1] His questioning and the record suggest that he was knowingly attempting to elicit expert testimony without prior disclosure. While the circuit court’s sustaining of the- defense’s, objections salvaged what could have otherwise merited reversal on appeal, we nonetheless emphasize that the prosecutor’s approach was inappropriate.
[¶ 17.] 2. Whether the improper contact between the juror and spectator requires reversal.
[¶ 18 J Even without knowledge of the substance of the conversation, Janis argues that the contact between the juror and the spectator warrants a new trial. Janis argues that a presumption in favor of reversal exists when there is contact between a juror and a spectator and that the presumption can only be rebutted, upon questioning the juror about the contact. See State v. Brown, 84 S.D. 201, 207, 169 N.W.2d 239, 242 (1969). Janis argues that the presumption remains because the circuit court did not-question the juror at all about the contact and the State has failed to rebut it on appeal., '
[¶ 19.] This argument ignores the fact that at trial, the court asked the parties if they consented to the court’s choice to ignore the contact as the court did not wish to emphasize it. Janis’s trial counsel fully consented, asking only that the court give an extra warning to the bailiff to be aware of future contact. This clearly distinguishes this case from Brown, where the defendant immediately requested a mistrial upon learning of the contact. 84 S.D..201, 206, 169 N.W.2d at 241. Here, the defense consented to the circuit court’s decision to not address the contact with the juror. While the defense may have brought the matter to the attention of the court, Janis cannot now complain of the court’s failure to investigate the contact when Janis declined the opportunity to object or to suggest other courses of conduct. In re M.S., 2014 S.D. 17, ¶ 17 n. 4, 845 N.W,2d 366, 371 n. 4 (“It is the Court’s ‘standard policy’ that ‘failure to argue a point waives it on appeal.’ ” (quoting In re Estate of Smid, 2008 S.D. 82, ¶43 n. 15, 756 N.W.2d 1, 15 n. 15)).
[¶ 20.] 3. ■ Whether the prosecutor committed prosecutorial misconduct.
[¶ 21.] Janis next argues that the prosecutor engaged in prosecutorial misconduct through his various comments during the trial. Janis acknowledges that trial counsel did hot object to these comments at any point during trial, and thus our review is for plain error. SDCL 23A-44-15. See State v. Hayes, 2014 S.D. 72, ¶ 24, 855 N.W.2d 668, 675 (holding that properly objected to.instances of prosecu-torial misconduct are reviewed for an *82 abuse of discretion, but, “if an issue of prosecutorial misconduct is not properly preserved for appeal, this Court will analyze the claim under plain error”). Plain error merits reversal only when there is an “(1) error, (2) that is plain, (3) affecting substantial rights; and only then may we exercise our discretion to notice the error if (4) it ‘seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.’ ” State v. Nelson, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443 (quoting Johnson v. United States, 520 U.S. 461, 466-67, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)). Janis has the burden of showing that the plain error resulted in prejudice. See United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). See also State v. Whitfield, 2015 S.D. 17, ¶ 16, 862 N.W.2d 133, 139. “We invoke our discretion under the plain error rule cautiously and only in exceptional circumstances.” State v. Olvera, 2012 S.D. 84, ¶ 9, 824 N.W.2d 112, 115 (quoting State v. Jones, 2012 S.D. 7, ¶ 14, 810 N.W.2d 202, 205).[1]
[¶22.] We have held prosecu-torial misconduct to be a “dishonest act or an attempt to persuade the jury by the use of deception or by reprehensible methods.” Hayes, 2014 S.D. 72, ¶23, 855 N.W.2d at 675 (quoting State v. Lee, 1999 S.D. 81, ¶ 20, 599 N.W.2d 630, 634). While trial counsel has “considerable latitude in closing arguments,” a prosecutor also shares in the court’s obligation to ensure that the defendant receives a fair trial. State v. Smith, 1999 S.D. 83, ¶ 42, 599 N.W.2d 344, 353. It is not the prosecutor’s duty to “seek a conviction at any price.” Id. “The prosecutor must refrain from injecting unfounded or prejudicial innuendo into the proceedings, and [must] not appeal to the prejudices of the jury.” State v. Janklow, 2005 S.D. 25, ¶ 47, 693 N.W.2d 685, 700-01 (quoting State v. Blaine, 427 N.W.2d 113, 115 (S.D.1988)). “A criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone,” but, if the prosecutor’s conduct affects the fairness of the trial when viewed in context of the entire proceeding, reversal can be warranted. United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). Appellate courts must “relive the whole trial imaginatively” and not “extract from episodes in isolation abstract questions of evidence and procedure.” Id. at 16, 105 S.Ct. at 1047 (quoting Johnson v. United States, 318 U.S. 189, 202, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943) (Frankfurter, J., concurring)).
[¶ 23.] Under plain error review, we must initially determine if there was error at trial that is plain. Janis first argues that comments made by the prosecutor during voir dire qualify as plain error. Prospective jurors may not be questioned about hypothetical facts to be proved at trial, but may be questioned about their *83 mental attitudes regarding certain types of evidence. Hayes, 2014 S.D. 72, ¶ 31, 855 N.W.2d at 678 (quoting State v. Moeller, 2000 S.D. 122, ¶ 50, 616 N.W.2d 424, 441). Voir dire is intended for questioning jurors about potential biases. The prosecutor’s assertion that Janis raped the maid of honor on Janis’s own wedding night could only serve to inflame the jurors’ prejudices. It was not phrased as a question to any juror, and thus could not have served to elicit any potential biases. The prosecutor also asked questions regarding what the jurors considered to be signs of intoxication. Such questions were not about their attitudes toward certain types of evidence, but were impermissibly related to the facts of the trial. See id. When the prosecutor later referenced the jurors’ comments from voir dire in his closing, he brought the jurors’ experiences into the trial to an inappropriate degree.
[¶ 24.] The prosecutor’s most egregious conduct was his repeated reference to Janis breaking his wedding vows and to Janis’s character. These comments culminated in the prosecutor’s closing, when he asserted that the case was about Janis’s character. The prosecutor inexplicably stated in closing that “[t]his goes to the character of the person that took the vows, and that is essentially what I’m asking you to judge is, I’m asking you to judge Cleve Janis and his character when he took those vows.” (Emphasis added.) We have previously disapproved of a prosecutor referring to a defendant’s character in closing argument. Janklow, 2005 S.D. 25, ¶ 48, 693 N.W.2d at 701 (disapproving of a prosecutor’s use of character evidence in the context of prosecutorial misconduct, but affirming the conviction due to a lack of prejudice). See also SDCL 19-19-404 (stating that evidence of a person’s character is inadmissible to show that a person acted in conformity with that character on a particular occasion). The jury’s duty is to determine whether the elements of the charged offense have been met, not to judge the defendant’s character. State v. Lybarger, 497 N.W.2d 102, 105 (S.D.1993) (“It is the jury’s role to decide whether the elements of an offense have been met.”). It does not matter that these comments occurred in the context of the prosecutor’s discussion of credibility — to outright declare that the jury’s role was to judge the defendant’s character is exceedingly inappropriate. Therefore, the prosecutor’s comments throughout trial amount to error that is plain.
[¶ 25.] While the comments of the prosecutor were improper, Janis must still show that his substantial rights were affected by the error. See Nelson, 1998 S.D. 124, ¶ 8, 587 N.W.2d at 443. “Specifically, [the defendant] must demonstrate that the error affected the outcome of the proceeding.” Hayes, 2014 S.D. 72, ¶37, 855 N.W.2d at 679. While the prosecutor’s conduct in this case was exceedingly inappropriate, we note that the circuit court correctly instructed the jury on all of the elements of third-degree rape and the duties of a jury. We must assume that the jury followed these instructions. Baddou v. Hall, 2008 S.D. 90, ¶ 37, 756 N.W.2d 554, 563. The elements of third-degree rape were also described by both the defense and prosecution in their closing arguments.
[¶26.] Additionally, this case did not turn on Janis’s character but rather on the victim’s consent and her level of intoxication. There was evidence that she was “super drunk” and barely able to hold a conversation. She also could not eat without spilling. With respect to consent, Janis concededly lied the morning after the incident when he claimed that he did not have sex with the victim. On the other hand, the victim immediately and consis *84 tently asserted that the sex was noncon-sensual to her mother, to Moreno, and to the hospital staff. Janis also testified that the victim said to stop and he did. Yet, DNA evidence indicated that Janis proceeded to the point of ejaculation. In light of both testimony and physical evidence supporting conviction, as well as proper jury instructions, Janis has not shown that the outcome would have been different had the prosecutor not engaged in misconduct. He therefore has not met his burden under plain error analysis and is not entitled to a new trial on this issue.
[¶27.] The heavy burden Janis now bears through plain error analysis is due to trial defense counsel’s failure to object tp any of the inappropriate behavior exhibited by the prosecutor at trial. Had .there been an objection that was overruled, the State would have the burden on appeal to show that the error was harmless under SDCL 23A-44-14, and the result, on appeal may have been different. See Olano, 507 U.S. at 734, 113 S.'Ct. at 1778 (noting the burden change on appeal when defendant objects at trial). ,
Conclusion
[¶ 28.] The circuit court did not erf by admitting Murphy’s testimony. The question permitted was rationally based on the witness’s perception and was qualified as opinion testimony under SDCL 19-19-701 as distinguished from an expert’s opinion under 19-19-702. Additionally, Janis effectively waived his argument regarding the contact between the juror and the spectator by consenting to the circuit court’s proposed action and not asking the court to take further action other than cautioning the bailiff. We will not reverse due to the prosecutorial misconduct. ■ The prosecutor’s, behavior was inappropriate, but Janis has not shown that the result of the trial would have likely been different had the misconduct not occurred. We affirm.
[¶ 29.] GILBERTSON, Chief Justice, and ZINTER and WILBUR, Justices, . concur.
[¶ 30.] KERN, Justice, concurs in part and dissents in part..

. This fourth component of plain error analysis does not necessarily mean the same thing as “structural error,” which is applied to a very limited class of cases and in a criminal trial requires a reversal. The United States Supreme Court has found structural error only when there has been “(1) a deprivation of tiie right to counsel; (2) a biased judge; (3) an unlawful exclusion of grand jurors of the defendant’s race; (4) a deprivation of the right of self-representation at trial; (5) a deprivation of the right to a public trial; and (6) an erroneous reasonable doubt standard.” Hayes, 2014 S.D, 72, ¶ 17, 855 N.W.2d 668, 674 (quoting Guthmiller v. Weber, 2011 S.D. 62, ¶ 16, 804 N.W.2d 400, 406). The Supreme Court also analyzed the distinction in Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). In Johnson, the Court stated, "A ‘structural’ error ... is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself[.]' ” Id. (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)).