#27791-a-DG
**2016 S.D. 81**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

MARLIN WAYNE GREENWOOD,                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


BEAU J. BLOUIN of
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota              Attorneys for defendant
                                        and appellant.



* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 7, 2016
OPINION FILED **11/22/16**

#27791

GILBERTSON, Chief Justice

[¶1.] Marlin Greenwood appeals from a conviction for aggravated assault, in violation of SDCL 22-18-1.1(1) and SDCL 22-18-1.1(4). Greenwood argues that the circuit court erred by allowing testimony of a nurse practitioner, who opined about the seriousness of the victim's injuries. Greenwood contends that such error was plain and violated his Fifth and Sixth Amendment rights to a fair trial by jury. We affirm.

## Background

[¶2.] On April 3, 2015, Damon Fabre hosted an evening social gathering at his Sioux Falls apartment in Minnehaha County. Marlin Greenwood, as well as four other individuals—Martin, J.R., Twila, and Detroit—attended. The group consumed alcohol including beer and vodka.

[¶3.] Some twenty minutes after Martin's arrival, Fabre accused Twila of stealing his cell phone. Twila argued with Fabre and then left with J.R. Detroit had departed prior to the argument. Fabre, lying down on the couch and still upset, asked Martin and Greenwood to leave as well. Martin refused, as he had just opened his second beer. Martin observed that Greenwood was "extremely irritated" and "went berserk," and he began "kick[ing] [Fabre] in the face . . . seven times" before "punch[ing] him seven or eight times." The kicks were "flat-faced . . . [Greenwood] didn't use his heel or his toe." Fabre did not appear to fight back, or offer any verbal resistance.

[¶4.] Martin asked Greenwood what he was doing, prompting Greenwood to cease for "about two to three minutes." Greenwood, however, then resumed kicking

-1-

Fabre's face six more times. Martin, who was on blood thinners and thus prone to bleeding, did not intervene, fearing that Greenwood would retaliate if he did so.

[¶5.] After the second assault, Greenwood again seemed to compose himself. But "for some reason he got back up and . . . gave [Fabre] three more kicks." At this point Martin observed that Greenwood had "kind of wore himself out." Martin then found a cell phone and used it to call the police.

[¶6.] Sioux Falls Police Officers Justin Reiter and Paul Frerichs were the first respondents to the scene. Officer Reiter indicated that Fabre "was covered in blood" and "his face was unrecognizable as a human face to [him]." Officer Reiter requested a supervisor in his belief that "it was going to be a homicide."

[¶7.] Officer Peter Blankenfeld was dispatched to Fabre's residence. Other law enforcement officers and paramedics were present when Officer Blankenfeld arrived on the scene. While medical staff attended Fabre, Officer Blankenfeld attempted to speak with Greenwood, who was seated in the apartment. Officer Blankenfeld observed that Greenwood "became disorderly when being asked questions about what had occurred[.]" Photographs of the crime scene taken by Officer Matthew Wolfe depicted blood splatters traveling up against the wall and on the cushions of the couch. According to Officer Reiter, the blood went "almost all the way up to the ceiling."

[¶8.] Fabre was taken to Avera McKennan Hospital (Avera). Fabre remained in the hospital for four days. Fabre's face and neck experienced significant tissue swelling, and a risk for airway compromise existed. Fabre was

concussive, and a rapid response team responded the first night of his stay due to Fabre seizing and having difficulties with his breathing.

[¶9.] An indictment against Greenwood was filed on August 15, 2015. It charged Greenwood with two counts of aggravated assault, in violation of SDCL 22-18-1.1(1), -1.1(4), and three counts of simple assault, in violation of SDCL 22-18-1(1), -1(2), -1(5). Greenwood pleaded not guilty to all charges, and a two-day trial commenced December 2.

[¶10.] Rebecca Ann Nichols testified at trial as a State witness. Nichols is a nurse practitioner who helped care for Fabre during his treatment at Avera. Nichols explained that a nurse practitioner is "like a combination of taking a registered nurse and a doctor and kind of smashing them together," and that they possess "the ability to diagnose and treat illness." She provided her educational background, which includes a bachelor's degree in nursing from South Dakota State University and a master's degree in nursing from University of Nebraska Medical Center. In her capacity at Avera, Nichols helped provide "acute care surgery services . . . as well as [treat] general trauma."

[¶11.] Nichols opined that she "absolutely" considered Fabre's condition to be a "serious bodily injury" because his airway was "questionable or compromised[.]" When asked by the prosecution if "being kicked in the head is a dangerous proposition," Nichols answered "yes." While reviewing photographs taken of Fabre's condition, Nichols testified that it looked as though he had suffered "blunt force trauma to the face and the neck and the front of the chest[.]" The defense did not raise any objections during Nichols's testimony. Cross-examination consisted of

questions related to Fabre's physical condition. Nichols testified that Fabre had high levels of alcohol in his blood. The defense asked whether the seizure Fabre had suffered the first night of his stay was related to alcohol withdrawal. Nichols responded, "That was the feeling, yes."

[¶12.] On redirect, the prosecution asked Nichols whether she believed that Fabre's injuries resulted from his drunkenness. Nichols answered "no." When asked again if the assault had compromised his airway and "put him in a situation where he had a serious bodily injury," Nichols answered in the affirmative. Nichols also affirmed that "it [is] true that people that are alcoholics . . . have a propensity to bleed and not clot if they start bleeding[.]" However, Nichols reiterated her agreement with the prosecution's observation that "what put [Fabre] in peril was the beating and not that he was drunk[.]"

[¶13.] After the State rested, the defense moved for a judgment of acquittal, citing "the lack of serious bodily injury in this case." The circuit court denied the motion, stating that "the motion for a judgment of acquittal is properly denied if there is some evidence that would leave the jury to determine . . . that the defendant may be guilty of the crimes charged." The court referred to the jury instruction defining a serious bodily injury as that "which is grave and not trivial and which gives rise to apprehension of danger of life, health, or limb." The court observed that, per Nichols, Fabre "was seen by speech therapy[ and] physical therapy," and that he had suffered "blunt force trauma to the face, neck, and chest," requiring "hospitalization and medical care for four days." Based on that definition

and testimony, the circuit court believed the "jury could reasonably find the defendant guilty of the crime charged[.]"

[¶14.] The jury returned guilty verdicts on both counts of aggravated assault. On February 10, 2016, Greenwood received a sentence of twenty years in the state penitentiary. Greenwood appeals, alleging that the court erred by allowing Nichols to give her opinion regarding the seriousness of Fabre's injuries.

## Standard of Review

[¶15.] "A trial court's decision regarding the qualification of experts and the admission of their testimony will only be reversed upon a showing of an abuse of discretion." *State v. Well*, 2000 S.D. 156, ¶ 11, 620 N.W.2d 192, 195 (quoting *State v. Spaans*, 455 N.W.2d 596, 599 (S.D. 1990)).

## Analysis

[¶16.] Greenwood acknowledges that he failed to preserve this issue on appeal by not objecting at trial. Nevertheless, Greenwood argues that plain error analysis is available. Plain error review must be "applied cautiously and only in exceptional circumstances." *State v. Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d 288, 293. To establish plain error, an appellant must show "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *State v. Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d 816, 822 (quoting *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d. 439, 443). Additionally, "[w]ith plain error analysis, the defendant bears the burden of showing the error

#27791

was prejudicial." *Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d at 293 (quoting *Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d at 443).

[¶17.]    The circuit court properly admitted testimony by Nichols that Fabre had suffered a serious bodily injury. SDCL 22-18-1.1(1) reads in part that:

> Any person who:
>
> (1) Attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life; . . .
>
> (4) Assaults another with intent to commit bodily injury which results in seriously bodily injury; . . .
>
> is guilty of aggravated assault.

At the time of trial, SDCL 19-15-2 provided that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."[1] "We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony." *State v. Hill*, 463 N.W.2d 674, 676

---

1.    In January 2016, SDCL 19-15-2 was transferred to 19-19-702 and now reads:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) The testimony is based on sufficient facts or data;
> >
> > (c) The testimony is the product of reliable principles and methods; and
> >
> > (d) The expert has reliably applied the principles and methods to the facts of the case.

(S.D. 1990). Greenwood, however, cites *State v. Lybarger*, 497 N.W.2d 102, 105 (S.D. 1993) for the proposition that it is a "clear abuse of the trial court's discretion to allow [a doctor] to give his opinion of an element of [an] offense."

[¶18.]    In *Lybarger*, the circuit court allowed the State's expert witness, a doctor, "to give his opinion about whether [the victim's] injuries constituted 'serious, bodily injury'" after being read the legal definition thereof. 497 N.W.2d at 104. We held that an expert witness may not "'usurp' the power of the jury by giving opinions on the 'ultimate issues' of the case." *Id.* (citing *State v. Logue*, 372 N.W.2d 151, 156-57 (S.D. 1985)). We concluded that such testimony "went beyond medical matters" by opining "whether [the] legal definition had been satisfied." *Id.* at 104-05. Greenwood likens Nichols's testimony to that given in *Lybarger*, contending that he was thus deprived of his "Fifth and Sixth Amendment rights to a fair trial and a jury determination of whether every element of the charges [was] satisfied beyond a reasonable doubt."

[¶19.]    However, the case before us is distinguishable from *Lybarger*. In *State v. Well*, this Court stated that "[a]lthough statements relating to . . . the cause of physical injuries are permissible to assist the trier of fact, they frequently exceed permissible medical opinion and become impermissible legal opinion." 2000 S.D. 156, ¶ 17, 620 N.W.2d at 196. In *Well*, a doctor testified that he used photographs taken of the victim, who the State alleged suffered from abuse or cruelty to a minor, to use as teaching material in his class about child abuse. We suggested that "it would have been preferable to exclude the statements that these injuries were characteristic of 'abusive injuries' and taken for classes on 'child abuse.'" *Id.*

Nevertheless, we held that allowing the testimony was "not impermissible or harmful error, especially in the absence of a motion to strike or admonish." *Id.*

[¶20.] As the State argues, the statements made here by Nichols were further afield from touching on "an opinion of guilt or innocence" than those made by the doctor in *Well*. And unlike *Lybarger*, Nichols was not asked about whether Fabre's injuries satisfied the legal definition provided by statute, and the prosecution made no attempt to define the term for her. Rather, the prosecution elicited Nichols's own opinion about what she considered to be a serious injury. To this end, Nichols stated that a compromised airway "absolutely" would be something she considered to be a "serious bodily injury," affirming that such injuries could result in the patient's death. Nichols also pointed to specific details about Fabre's injuries, such as the swelling of soft tissue and her observations of blunt force trauma. Greenwood's analogy to *Lybarger* therefore collapses. Nichols's opinion did not go "beyond medical matters." *See Lybarger*, 497 N.W.2d at 104. Nichols "was not asked nor did [she] give an opinion as to [Greenwood's] guilt or innocence," and thus her testimony "did not 'invade the province of the jury." *See Well*, 2000 S.D. 156, ¶ 16, 620 N.W.2d at 195. Therefore, the circuit court did not err by permitting her testimony.

## Conclusion

[¶21.] It was not error by the circuit court to permit Nichols to opine whether Fabre suffered a serious bodily injury, let alone plain error. Nichols's testimony did not express a conclusion about an ultimate legal issue, and her observations could

#27791

reasonably assist a trier of fact in arriving at a verdict.  Therefore, Greenwood was not deprived of a fair trial by jury.

[¶22.]      Affirmed.

[¶23.]      ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.